## LE MUR CO. v. W. G. SHELTON CO.

Circuit Court of Appeals. Eighth Circuit.
March 29, 1929.

Rehearing Denied May 22, 1929.

No. 8345.

F. O. Richey, of Cleveland, Ohio (Lawrence C. Kingsland, of St. Louis, Mo., and Richey & Watts, of Cleveland, Ohio, on the brief), for appellant.

Rodney Bedell, of St. Louis, Mo. (Eugene V. Myers, of New York City, on the brief), for appellee.

Before LEWIS, Circuit Judge, and WOODROUGH and McDERMOTT, District Judges.

WOODROUGH, District Judge. This is a suit joining the causes of patent infringement and unfair competition. Upon the trial the patent was held invalid because anticipated by the prior art, and the issue as to unfair competition was determined in favor of the defendant against the plaintiff. The plaintiff appeals.

██ Having been duly allowed in the Patent Office, the presumption of validity must be accorded to the patent. It relates to a steaming tube for hair waving, and the drawings, specifications, and claims cover 15 pages of printed matter very closely set up. But the article itself, as shown to the court, is made up of sheets of white paper and a sheet of metal foil rolled into a little tube some three-quarters of an inch in diameter and about five inches long, with the foil projecting beyond the paper at the ends. The foil and the paper are rolled together so that the foil remains inside between the layers of white paper.

It appears that in the use of this article in the operation of hair waving a portion of the hair is gathered into a strand and the strand is wound around a rod corkscrew fashion. Then the strand of hair on the rod is wrapped about with a flannel wetted in a certain chemical solution; the patented tube is slipped over all, and the foil at the ends of the tube is crimped with a crimper. A felt washer is fitted around the strand at the scalp and a fiber clip is clamped above the washer. The tube conforms to the size and

shape of the heating chamber of an electric heater for which it is adapted, and on being thus arranged about the wet flannel, the hair, and the rod, and inserted into the chamber and the proper amount of heat applied, the conditions are present to produce waves in the hair.

The advantages and points of novelty and invention claimed for the patented article are entirely too numerous to set out in detail. Many pages of the specifications and claims of the patent are taken up with them, and they have been greatly elaborated by able counsel at the bar and in the briefs. However, the single patent expert called by plaintiff on the trial to support the patent says that the salient features of the invention, "so far as the mechanics of the invention go, are—

"(1) The provision of a wrapper of discolorable material, which will serve as a warning signal to the operator (i. e., in regard to the heat).

"(2) The provision of a foil of such strength that when it is crimped it would practically seal the ends of the tube about the hair or the curling rod."

Such condensation in regard to a patent having 39 allowed claims and voluminous specifications may be extreme. It does not mark the limits of our search of the record, but, as it is the summing up of the expert employed to study the patent and called to inform the court of any merits, reference to his condensation may aid to bring this opinion within reasonable limits.

Concerning the discoloration of the white wrapping paper (under the heating process) to serve as a warning signal to the operator, the proof is clear and satisfies us that the claim is without foundation in the facts. It is shown that there are many kinds of human hair, each kind more or less differently affected by different degrees and quantity of heat; that skill is developed in some operators in the matter of determining the proper amount of heat for different operations; that the time measure, that is, the time the heat is kept on, is the measure that is mostly depended on and is the one which is enjoined upon its own customers by the appellant; and that in practice no dependence is or can be placed upon the discoloration of the paper as a warning signal. The discolorable feature of the ordinary white paper wrapped around the tube therefore lacks usefulness. It also lacks novelty because paper was long used for hair-waving tubes, and paper generally tends to char and discolor under heat.

Neither do we find any merit of useful novelty or invention in "the provision of a. foil of such strength that when it is crimped it would practically seal the ends of the tube about the hair, or the curling rod." The evidence clearly shows that the crimped foil is not adapted to and does not perform the function of sealing the ends of the tube about the hair or the curling rod either actually or practically. Whatever the word may be which is most apt to describe the kind of contact that a metal foil maintains when crimped about a rod or a strand of hair, the word "seal" is obviously inapt and strained. On the contrary, the crimped foil merely makes a more or less form sustaining wrapping about such objects, when crimped upon them, and thus serves the usual purpose to which foil is commonly put in the view of all of us very frequently, wrapped about cigars, candy, and many other articles. The same form embracing nonresilient and form sustaining qualities of the foil are depended upon in all of these uses as in the use made of the foil in the article in question. There is no suggestion of either novelty or invention.

The evidence also shows clearly that no pressure of steam is permitted to gather in the tube during the waving operation, but the leakage of the heated liquid in the felt wrapping through the bottom of the tube to the head is to be avoided. Such leakage is prevented in whole or in part by the action of the fiber clip and the presence of the felt washer, and there is no proof that foil crimped about the rod or hair accomplishes the results.

It appears to us, therefore, that the provisions of the article pointed out and relied upon by the expert as features of invention are plainly not such, even without much reference to the particular prior art. But we have before us a book of the prior art, other applications for patent, principal papers in interference in the Patent Office, and many references and examples all directly applicable. Our study has included all of the record, and confirms the conclusion that the trial court was right in holding the patent void. The convolution of metal foils and paper into tubes for hair waving was disclosed in the British patents issued to Aldworth, and appliances embodying the teachings of his patents were extensively used in commerce throughout this country some years before the patent in suit was applied for or invention claimed in regard thereto. The first British patent to Aldworth anticipated the

plaintiff's patent and each of the claims thereof relied on this case, and his second British patent accentuated it.

We do not ignore appellant's many claims concerning the use of strings in the prior art for tying the waving tube upon the curl. Aldworth did use a string for that purpose and nowadays no such tying with a string is generally done by hair wavers. But we are not persuaded that the change in practice is attributable to the teachings of the patent in suit. It has more probably resulted from more general use of some such washers and clamps or clips as are exhibited with the record and used by the plaintiff.

Our conclusion that the patent is invalid and the matter not in doubt obviates discussing in detail many contentions ably urged by counsel. The volume of plaintiff's trade under its patent, the reactions of others in the trade, and the changes of practice in the rapidly extending field of the art, have afforded material for forceful arguments. We do not fail to appreciate appellant's faith in its patent. But as we can find neither novelty nor invention, simply old elements applied to old uses, and clear anticipations in the prior art patents, all presumption in favor of the patent is overcome and the patent fails.

In the suit for unfair competition the plaintiff asserts an actual intent to trade upon the good will belonging to it, and also such a trespass resulting from defendant's acts regardless of intent.

It is apparent that when the defendant rolls sheets of white paper and one of metal foil into a little tube adapted in size and shape to fit into the same heating chamber for which the plaintiff's tube is manufactured, there is bound to be kinship in the appearances. It is equally apparent that when instructions are given out for operators, identical steps to be taken whichever article is used, are likely to be similarly described. So also in advertising and selling methods. The courts are jealous to protect good will in equity against spoliation and are fully aware of the vast increment brought to this kind of intangible property by modern advertising and methods. On the other hand, this equity power of the court must not be stretched to confer by indirection upon one who has no patent and no special right of priority a better and more enduring monopoly than has a patentee. A manufacturer, therefore, must be admitted to have good right to make and vend any unpatented article embodying therein the necessary func-

tional parts so that the whole will function. If he goes beyond and incorporates what is purely distinctive, ornamental, fanciful, or otherwise merely peculiar to the product of another, he may trespass.

Applying these elemental rules to the very numerous details and circumstances pointed out and argued from the record, we are not persuaded, either that the defendant intended to palm off its goods for those of its competitor, or that in fact any such confusion was occasioned by the defendant's conduct of its business. Its goods are plainly marked with its name, and by adopting a colored paper for its wrapping, putting special and conspicuously different markings thereon, and otherwise identifying its product for its own trade, it appears to us that the defendant has not only disproved any intent to trade on plaintiff's right, but that the plaintiff is not in fact suffering any such wrongful invasion by reason of the defendant's manufacture and trade. As to a very insignificant number of tubes manufactured by defendant there were some markings and dressings which approximated the appearances so closely that a confusion might have been brought about. Likewise in the printed matter there was such a possibility. But the drastic steps promptly taken by defendant plainly prove its determination to trade on its own product and its own reputation, and the charge of unfair competition is not sustained.

The decree of the trial court is therefore affirmed, with costs.