## LEKTRO–SHAVE CORPORATION v. GENERAL SHAVER CORPORATION.

### No. 2628.

District Court, D. Connecticut.

July 7, 1937.

Stanley Osserman and Abraham M. Lowenthal, both of New York City, for plaintiff.

Carlos Ellis, Jr., of Middletown, Conn., and Samuel E. Darby, Jr., of New York City, for defendant.

THOMAS, District Judge.

On June 2, 1937, plaintiff filed its bill of complaint against the defendant, praying for a preliminary and permanent injunction enjoining the defendant from manufacturing, distributing, advertising, exploiting, or selling, or offering to sell, its electric shaving device with its present round head, or any shaving head similar thereto or similar to the shaving head of the plaintiff. On the same day, by rule nisi, the defendant was ordered to show cause why a preliminary injunction should not issue and hearing was held on the rule on June 16th.

The defendant, on June 11, 1937, filed a motion to dismiss the bill of complaint, assigning, among others, the reason that the bill of complaint fails to allege facts which constitute a cause of action against the defendant.

It is a general rule that a preliminary injunction will be granted only in cases where the evidence is clear and where no substantial doubt exists as to the plaintiff's rights to the injunction. In unfair competition cases evidence of unfair conduct must be reasonably clear. On the other hand, in some instances the issuance of a preliminary injunction is most important, if not

vital to the protection of industrial property.

Having these observations in mind and exercising that duty that is required of a court not to damage the business of a defendant nor unreasonably hesitate to give proper protection to a plaintiff's business, the controversy between the parties, as it appears from the motion for preliminary injunction, may be briefly stated to be as follows:

Plaintiff, a New Jersey corporation, is now, and has been engaged since the latter part of 1935, in the business of manufacturing and selling an electric dry-shaver known as the Packard Lifetime Lektro-Shaver. It has expended large sums of money in developing, manufacturing, and selling the said shaver, and also in advertising its said product. It has sold upwards of 500,000 shavers in the United States and in foreign countries. In practically all of its advertising the plaintiff has featured its shaver as having a "round shaving head," and it is alleged in the bill of complaint and in the motion papers that the said "round head" so advertised and distinguished has become a distinguishing feature of the plaintiff's product and has become associated in the mind of the public with the plaintiff and its product.

The defendant, General Shaver Corporation, doing business in this district, is selling and distributing since May, 1937, an electric shaver under the trade-name "Remington Close-Shaver." This shaver is provided with a head alleged by the plaintiff to be of a shape confusingly similar to the shaving head of its device.

Plaintiff charges the defendant with unfair competition, alleging that the latter deliberately and intentionally copied the plaintiff's shaver head so that the two heads are to a casual observer substantially identical in appearance, and retail purchasers are likely to mistake one for the other.

It does not appear from the motion papers nor from the evidence whether the shaver of the plaintiff is protected by patents, so that, for the purpose of this proceeding, I must assume that it is an unpatented article. It is well settled in the law of unfair competition that a manufacturer has good right to make any unpatented article embodying therein necessary functional parts so that the whole will function; but, if he incorporates what is distinctive, ornamental, fanciful, or merely peculiar to another's product, he may trespass. Le Mur Co. v. W. G. Shelton Co. (C.C.A.) 32 F.(2d) 79. To entitle a complainant to injunctive relief because of the imitation by defendant of nonfunctional features of his product, it must be shown that such features have become associated by the public with him as the manufacturer or source Crescent Tool Co. v. Kilborn & Bishop Co. (C.C.A.) 247 F. 299. Therefore, the sole question in this controversy is as to whether or not some of the features of defendant's shaver are nonfunctional and whether such nonfunctional elements have been embodied in defendant's shaver head for the purpose and with the effect of misleading the public.

In order to deal intelligently with these questions, it is necessary to describe and compare the mechanical details of the plaintiff's and defendant's shavers, exhibits of which have been introduced in evidence at the hearing before me.

Plaintiff's shaver comprises a casing, within which is mounted an electric motor for actuating one of the two cutters presently to be described. The shaver head includes a cylindrical housing which is fixed to the casing. In this housing is formed an eccentrically located cylindrical bore that extends longitudinally of the housing and is so arranged in relation to the external cylindrical face of the housing that the latter is provided with an exceedingly thin portion at that area thereof at which it is to contact with the skin of the user in the process of shaving. At its thin portion the housing has cut therein a longitudinal slot, and at right angles to the said slot the thin portion of the housing is provided with teeth. The housing constitutes one of the cutters of the implement, and with its teeth co-operate those of a cylindrical cutter, arranged in the said bore both for reciprocation and oscillation. Reciprocating and oscillating movement is imparted to the last-mentioned cutter by the electric motor in the casing of the device.

The defendant's shaver differs from that of the plaintiff only in the following details:

1. It lacks the longitudinal slot in the housing within which the movable cutter operates.

2. Its cutter housing has a plurality of flattened surfaces which, however, are almost invisible to the naked eye.

3. Its cutter housing has two combing edges which, as I view it, do not change the

general cylindrical appearance of the said housing.

4. Its movable cutter has only a reciprocating motion, the oscillating motion of plaintiff's cutter being absent.

■ Defendant contends that all of the elements of plaintiff's shaver head are essential to the construction, in that they have a functional feature and that, therefore, it had full right to copy the same. With this I cannot agree. It appears to me that:

1. It is unnecessary for the proper operation of plaintiff's shaver head that the cutter housing be of cylindrical form. It is true that a substantial advantage may be had by making that portion of the housing which is to contact with the user's skin part of a cylindrical surface or generally curved, but it is unnecessary to make the casing, as a whole, cylindrical. Such feature is not necessary to the practical operation of the device and can be changed without lessening the effectiveness of the appliance. For instance, the housing may be generally polygonal with a curved toothed portion without in the least impairing its proper function and efficiency.

2. The cylindrical shape of the movable cutter of plaintiff's device is necessary for the proper operation of its shaver for the reason that no other shape would permit the said movable cutter to move to and fro and at the same time have an oscillating movement. However, as far as defendant's movable cutter is concerned, the cylindrical shape is unnecessary because the cutter has only a reciprocating motion. Obviously, any other shape could be used in defendant's shaver head and a cutter so shaped would operate just as efficiently as one of cylindrical shape.

Thus it is clear that the defendant has no occasion to use plaintiff's combination and has unnecessarily and knowingly imitated its rival's shaver head in nonfunctional features, and so a court of equity is justified in interfering by injunction. Rushmore v. Badger Brass Co. (C.C.A.) 198 F. 379.

■ The next question which arises is whether the slight changes incorporated in defendant's shaver head are such that the ordinary purchaser will be in position to differentiate the said shaver from that of the plaintiff. The comparison used in the courtroom, which was a side by side comparison, is not the final test of similarity or dissimilarity because the average purchaser, buying by mail or in a shop, has no chance to compare the plaintiff's goods with the defendant's. If he has only one article before him, the best he can do is to compare it with his memory of the other. The test of similarity is not visual comparison but memory comparison. I find that the difference between the two shaver heads is very small; in fact, they appear so much alike that any ordinary, sensible, and prudent purchaser, acting on the instant, would be deceived. As stated above, there are a few minor details incorporated in defendant's shaver head which I could not perceive at the hearing. I put myself in the place of the ordinary purchaser, and not in that of an expert —for instance, a merchant purchasing from the manufacturer. The fact that the merchant would not be deceived does not take this case out of the realm of unfair competition. It is the ordinary purchaser, an ordinarily prudent person, who must serve as the guinea pig when the question of deception is to be tested.

We now come to the question whether the features of plaintiff's shaver head have become associated by the public with the plaintiff as the manufacturer or source. Have those features created a secondary meaning whereby they have become to the public the indicia of origin? As far as it appears from the motion papers and testimony offered, there was no cylindrical shaver head or, as plaintiff's advertisements call it, a "round shaver head" on the market at the time plaintiff entered the electric shaver field, and there was no other until such time as defendant came on the scene. It is true that there are some patents in the record which show and describe cylindrical shaver heads. However, this has no bearing on the question in issue. From the affidavits and evidence before me I conclude that the round shaver head of plaintiff has in fact come to mean that some particular person or firm makes them, whether it be the plaintiff herein or some other person or concern associated with it. It is obvious that the duration of use required to create a secondary meaning cannot be measured by an accurate test. In the instant case within eighteen months' use by plaintiff's "round head" shape there arose a market for the product which, under other circumstances, might never have been attained and, doubtless, never would have been attained except through persistent, skillful, and expensive advertising, calling attention to the

"round head" feature. If under the circumstances stated, the plaintiff's shape of its shaver head acquired a secondary meaning, it was done very quickly and, while time is the usual standard because a natural one, it is not the exclusive one. The test of secondary meaning is whether the shape has become broadly known to the public as denoting a product of certain origin. Therefore, in looking for a secondary meaning this court is controlled by the fact that such a meaning has been acquired in the mind of the public rather than by the time it has taken for that fact to become established. The time in this case was unusually short, yet it is perfectly clear that by circumstances rather than by time the plaintiff's shape had acquired a secondary meaning within the full sense of that term.

If it is not the intention of the defendant to capitalize plaintiff's name and reputation, it cannot be harmed by changing the shape of its shaver head. This can be done without decreasing the efficiency of the device, as I have pointed out supra.

I conclude that the plaintiff has a property right in the "round head" feature of its shaving device; that plaintiff has made out a clear case of unfair competition by showing that the natural and probable result of defendant's conduct is to deceive ordinary purchasers, buying under ordinary conditions, into taking defendant's goods for those of the plaintiff's; that plaintiff has also proven that the shape of its shaver head had become associated in public mind with the plaintiff as the manufacturer or source before defendant entered the field; and that the defendant did more than merely copy functional features of plaintiff's device. Therefore, I am constrained to hold that plaintiff is entitled to the relief prayed for to the extent that the defendant be enjoined and restrained during the pendency of this action from manufacturing, distributing, advertising, exploiting, or selling or offering to sell, its shaving device with its present round head or any shaving head similar to the shaving head of the plaintiff.

Inasmuch as the plaintiff is entitled to an injunction as appears from the foregoing, defendant's motion to dismiss must be denied. It follows, therefore, that plaintiff's motion for a preliminary injunction is granted, and defendant's motion to dismiss denied. Submit decree properly consented to as to form.