## TERNSTEDT MFG. CO. et al. v. MOTOR PRODUCTS CORPORATION.

### No. 8623.

Circuit Court of Appeals, Sixth Circuit.

June 25, 1941.

John H. Bruninga, of St. Louis, Mo., and Alexander F. Baillio, of Detroit, Mich., for appellants.

Merrell E. Clark, of New York City (Merrell E. Clark, of New York City, and J. King Harness and William H. Gross, both of Detroit, Mich., on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Appellants, Ternstedt Manufacturing Company and General Motors Corporation, appeal from a judgment dismissing their bill of complaint against appellee, Motor

Products Corporation, for alleged infringement of two patents, namely, the Wright reissue patent No. 18866, dated June 13, 1933, for window construction in the body of a closed vehicle, and Fisher patent No. 2048605, dated July 21, 1936, for closed car ventilation, appellant Ternstedt Manufacturing Company, a wholly-owned subsidiary of appellant, General Motors Corporation, being owner of each patent by assignment. Claims 1, 8, 10, 11, 15, 16 and 19 of the Wright patent are in suit and all claims of the Fisher patent, five in number. Claim 10 of the Wright patent and claim 1 of the Fisher are typical and are in the margin.[1] The Wright original patent No. 1,861,828 was issued June 7, 1932, on application, serial No. 126,576 filed August 2, 1926, and Wright reissue patent No. 18866 was granted June 13, 1933, on application, serial No. 644,726 filed November 28, 1932. The Fisher patent was issued on application No. 644,622, dated November 28, 1932.

Wright claims that, prior to his invention, windows in closed moving vehicles operated only vertically and could not be utilized for interior ventilation without causing uncomfortable drafts and their extensive use for ventilation was not feasible in inclement weather, because of the entry of rain or snow into the interior and that the prior construction of closed vehicle bodies, particularly bodies in which the front door jamb also formed the corner post for the windshield, made difficult the use of a slanting windshield without corner posts so large as to obstruct the vision of occupants. He claims by his invention to have overcome or lessened the effects of all the above difficulties.

The essential features of his improvement of the glass portion of automobile bodies are the division of the old sliding, vertical glass frame into two parts, each separately framed, the back panel moving vertically in channel frames in the conventional manner, and the front panel pivoted on its front edge and the rear end swingable outwardly and retainable in numerous positions by individual control of the occupant. It is operated by irreversible gear connection mounted in the door, which connection is separate from that controlling the back panel.

Broadly stated, Wright proposes to have a window frame with a vertically sliding window adapted for closing or opening the rear portion thereof and a hinged window for opening or closing the remaining front portion and he specifically claims that the swinging front panel has two functions: that of an ejector or extractor of air combined with a shielding effect, which, in conjunction with the operation of the vertical rear panel, causes an inflow of air in the back of the vertical panel and an outflow in the back and front of the pivoted panel, thereby permitting ventilation without subjecting passengers to drafts in the process of changing the air about them. He also claims, by use of this construction, smaller corner posts may be utilized for slanting windshields which is desirable because better vision is afforded.

The rare and the new features, if any, in Fisher's alleged invention are so covered up in his specifications with the familiar and the old as almost to defy detection. Obvious and familiar things often impede us in our search for things that are rare and remote, but by the use of such industry of

[1] 10. A window for a vehicle body comprising a window casing having a well in the lower portion thereof, a transparent panel mounted to slide vertically in said casing and well and adapted to close a portion of the window opening, a second transparent panel pivotally mounted on an up and down axis in said casing adjacent the window opening and swingable to cooperate with said sliding panel in closing said window opening.

1. In a vehicle body, the combination with a closed body-wall structure including a window opening and well therebelow, or a panel supported in the front of the window opening on pivots to swing on an up and down axis substantially forward of the midpoint of the widest portion of the panel to provide a substan-

tially major area of the panel to the rear of the pivot, means by which the panel is prevented from turning front edge outwardly and the rear edge inwardly from closed position, the said panel being adjustable on said pivots to bring the rear section outwardly and held against undesired actuation in any of numerous angular positions up to substantially 90 degrees (measured on an arc to the rear of said panel axis) or more to the longitudinal center line of the car, and an upwardly and downwardly adjustable rear panel complementing said front panel and adapted to fill the space left in said window opening when the front panel is in closed position thereby forming a composite window opening closure.

intellect as we possess, busily exerted, sifting the old from the new in Fisher's specification, it appears that the only change he made from that of Wright is that the pivot point for the swinging panel is located intermediate of the front and rear edge of the panel rather than at its front edge, so that when it is swung about this intermediate axis, a portion of the panel swings out into the air stream providing an opening at the front of the axis of the pivots through which air may be introduced.

Considering the concrete exemplification of the invention set forth in the present patents, it appears they are a combination of two elements; (1) a swinging window in the frame of the vehicle which can be positioned to permit the influx of currents of air into the vehicle body and which can also be positioned so that the motion of the vehicle tends to induce air to flow from its interior; (2) a vertical sliding glass window of the conventional type, which complements the swinging window and which at different adjustments in cooperation with the swinging window acts to permit flow of air from the vehicle and its influx therein.

There is no doubt of the utility of this combination. If Wright was its original and first inventor, the device was patentable to him. Under the well-known rule of interpretation of patents, we immediately compare his alleged invention with the prior state of the art in order to ascertain the particulars, if any, in which the concrete exemplification of his invention as set forth in the specifications, has been differentiated from whatever device nearly akin which had preceded it.

■ The first closed car utilized movable windows for ventilation and window panes adjustable to various angles which, with the car in motion, would draw in fresh air and eject stale air. It is a matter of common knowledge that the closed body type of automobile first came into wide use in 1921. In February, 1922, P. W. Steinbeck, at the annual meeting of the Society of Automotive Engineers in New York, read a paper entitled "California Top," relating to the body structure of motor vehicles in which he described a structure built onto a conventional open body car with the purpose of converting it into a substantially closed car. He pointed out the division of the front window into two panels, the rear one slidable horizontally and the front one hinged at its front edge and adjustable as a wind deflector. The panels of the other windows also slid horizontally because of the adjustable top.

In December, 1924, Elmore H. Stafford had an R. V. Knight open touring car converted into a closed body type in which there were windows replacing the usual side curtains. The windows in the car had a metal frame, triangular in shape, the front member slanting and coinciding with the slant of the windshield. The front window was mounted in the door and had two panes, a front one fixed and a back one which slid forwardly over the front one so when the back pane slid forward, one-half of the window would open. At the front of the body a piece of plate glass was pivoted centrally in a frame so as to swing. On the inside of the top was a thumb screw, by turning which the glass could be fixed in any desired position. It would not rotate in a complete circle because of rubber weather stripping inserted in the inner side of the frame for the purpose of making a tight connection when closed.

In May, 1926, the Motor World published an article describing the Gardner Landaulet, a two-passenger car with a convertible top in which the windshield was in one piece and stationary, equipped with side frames with glass in them, which it was stated could be opened for ventilation. The glass in the doors could be raised or lowered whether the top of the car was up or down.

Wind wings for cars were developed as early as 1919 and used as attachments in connection with windows of conventional closed cars from the inception of these types of bodies. They were fixed structures built at the side of the windshield of touring cars in front of the door. In 1922, the Auburn car showed a design of side wings forming an integral part of the windshield and in 1923, its wind wings were placed in a frame, pivoted centrally, and could be operated in a complete axis, except when the windows to which they were complementary were closed. Prior to 1930, the Dole Valve Company advertised the "Dole Wind Wings" for attachment to any car which it claimed ventilated the car and, when used in door openings, acted on the same principle as the Louvre opening in the hood and pointed out that

the vacuum created behind the deflectors by the forward motion of the car, sucked the stale air from the interior and at the same time allowed fresh air to enter without creating disagreeable drafts and unpleasant cross currents.

In 1932, the General Motors Corporation used on its La Salle cars the Dole wings in the front and rear, which were pivoted in front of the center and operated substantially as Fisher and performed approximately the same function when the complementary sliding panel windows were open full width. When these windows were closed the wings were inoperative.

Prior to 1932, the Dole Valve Company endeavored to interest Fisher in the Dole wings, which were exhibited to him and when preparing the specifications for his invention, he gave particular consideration to their method of operation and the substance of his invention was to eliminate the wings as supplementary to the glass portion of the door and make them an integral part of it, putting them in a frame complementary to the sliding window.

On October 21, 1930, a motor publication, in describing the advantages of the Rolls-Royce car, stated it had the vertically sliding window in the rear of the front door and a vertical pane in the front part of the door pivoted somewhat ahead of the center and swingable from the closed position to a substantially angular open position, allowing for ventilation without draft.

Fennerty, in his patent No. 333,620 dated January 5, 1886, issued on application No. 167,421 filed June 2, 1885, for a car window, stated his invention related to the construction of car windows adapted to facilitate observation and ventilation and to prevent the entrance of dust and dirt. The main features of his invention, broadly stated, were the combination of two independently attached, laterally swinging windows pivoted at the edge onto opposite sides of an intermediate sliding window, which could be raised or lowered into the body of the car. He claimed perfect ventilation and an extended field of vision were obtained with complete exclusion of dirt and dust by the use of his combination.

Fennerty's construction was applied to a closed railroad car. He pointed out that those skilled in the art to which his invention related might apply his combination by constructing in the car a window

casing with the two pivoted outer windows, one to be swung out when the car was moving in one direction and the other when the movement was reversed. He claimed, by this arrangement, perfect ventilation would be achieved.

The evidence shows that, taking into consideration the specifications of Fennerty, he had precisely the same elements in his combination as Wright. However, Fennerty did not specifically claim or point out that the operation of the intermediate window in connection with the hinged window on each side would bring air from the outside into the car.

The Anibal patent No. 1,542,595, dated June 16, 1925, described how the front door of closed automobiles could be constructed to fit against a rearwardly inclined windshield with the front glass panel divided vertically, the front panel stationary and the rear panel vertically slidable.

The preponderance of the evidence shows that the use of inclined windshields in conjunction with vertically movable glass in the doors of automobile bodies was old to the art at the time Wright filed his original application, and that the use of separately pivoted glass portions adjacent to the windshield had been previously taught.

Appellants do not seriously controvert these facts, but insist that their assignors, by the specific arrangement and mounting of the panels in their inventions were the first to devise a combination which would adequately and properly ventilate an automobile and were also the first to point out a method by which a movable or divisible windshield could be eliminated in automobile bodies and adequate ventilation retained.

They claim their inventors devised a new construction which secured a distinctive and new mode of operation and satisfied a long felt want for a practical system of closed car ventilation combined with a more perfect and convenient body construction.

In considering the patentability of the present combination, we must not be misled by the fact that its use has been attended with commercial success in the way of a better and more satisfactory method of ventilating closed automobile bodies for in the steady advance incident to manufacturing progress, numerous non-

838

patentable processes and methods have proved original and exceedingly profitable, but not everything useful and novel is patentable. Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464, 476, 55 S.Ct. 449, 79 L.Ed. 997; Textile Machine Works v. Hirsch Company, 302 U.S. 490, 499, 58 S.Ct. 291, 82 L.Ed. 382.

▉ Automobile body designers have much for which to thank the early carriage builders, without whose example and traditions they would have been unable to make such rapid progress, nevertheless, their slavishness to the past caused them to lean too heavily upon the horse-drawn vehicles instead of going deeper into the origin of such features and forming a true appreciation of the new problems which the change in the manner of locomotion involved. The progress of the closed car in proportion to the number of open cars produced was very slow but the necessity of protecting the occupants of gasoline powered motor vehicles against the dangers of monoxide gas poisoning was early recognized and the ventilation of closed cars had the attention of body designers and automotive engineers from the first use of such cars and the improvements in this respect have been slow but steady. Each useful art has a technique recognized and practiced by those skilled in it which is broadened in its usefulness by following precedent.

One step is followed by another by those skilled in the art to meet the demand for advance. This is evolution and the step thus made not invention. Sometimes the advance along certain lines slows down and almost stops notwithstanding the demand and the efforts of those skilled in the art to continue the progress. At that point some one, "nourished by knowledge patiently won, bounded and conditioned by co-operant reason," takes a step, often a small one, but one which turns the halt into progress again. This is often true invention and yet may have the appearance of mere carrying forward, or the exercise of mere mechanical skill. Invention and patentability intervene only when another sort of mental faculty not possessed by those skilled in the art has come into play. Bullock Electric Mfg. Company v. General Electric Company, 6 Cir., 149 F. 409. It is often difficult to draw the line between patentability and improvements or adap-

tations. Each case must be decided on its peculiar facts. Roemer v. Simon, 95 U.S. 214, 218, 24 L.Ed. 384.

▉ Neither at the time Wright filed his application for his original patent nor at the time of reissue, had there been any halt in the art of designing or improving automobile bodies or their ventilation and this was true at the time Fisher filed his application. All inventors interested in upholding or defeating a patent are presumed to be fully acquainted with the state of the art when they apply for a patent or when they devise their combination. Every patentee, it must be assumed, borrowed from the other whatever was theretofore invented or known in the art to which his invention related, and in considering the state of the art, we are not required to overlook the fact of the cumulative growth of both inventions and scientific knowledge and their great diffusion among all the people. Mast, Foos & Company v. Stover Mfg. Company, 177 U.S. 485, 493, 20 S.Ct. 708, 44 L.Ed., 856.

▉▉ It has been generally known for a long time that when a solid body starts from rest to move through the air which is otherwise undisturbed, the form of the flow of air around the moving body is uniquely determined by the shape and mode of motion of the body and that the outflow and inflow of air is controlled by the shape, size and positions of the openings into the body. This general principle of aerodynamics has been long applied by those skilled in the art both to affect the flow of air on the passage of solid bodies through it and their internal ventilation. Wright and Fisher, having available to them all the general knowledge relating to the problem either of them may have solved and being chargeable with notice of all the pre-existing devices relating to the subject, in our opinion, the inventive faculty was not exercised by Wright in dividing the glass portions of the doors of automombile bodies into two parts and attaching one part to a movable hinge leaving the other slidable, nor by Fisher in fastening Wright's front window on pivots centrally located rather than on the side as in Wright. Neither of them invented a new device nor used an old device or a combination of old devices for a new purpose. All either did was to apply an old combination to an old purpose with a slightly different arrangement. The results added to the efficiency and popularity of

the older combination but in our opinion did not rise to the dignity of an invention. Mast, Foos & Company v. Stover Mfg. Company, supra.

Decree affirmed.