## OWENS v. BELL & HOWELL CO.
### No. 272.

Circuit Court of Appeals, Second Circuit.

May 29, 1944.

Dean S. Edmonds and Philip S. McLean, both of New York City, for plaintiff-appellant.

Valdemar Beeken and Axel V. Beeken, both of New York City, and Robert V.

116

Miehle, Jr., Chicago, Ill., for defendant-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

On October 25, 1932, United States Patent No. 1,884,169 was granted to the plaintiff who, as the owner, has sued the defendant for infringement of all three of its claims. The patent relates to a photographic camera of the lens turret type and the claims are for improvements in the turret. These improvements, as the specifications show, have to do with the association of a plurality of picture taking lenses of differing focal lengths mounted on the turret with matching view finder lenses also mounted thereon. As a lens used only as a view finder merely enabled the operator by looking through it to see what was within the range of the camera, it could be less expensive than a picture taking lens and yet serve its purpose well enough. Whenever a picture taking lens is turned to the picture taking position, its corresponding view finder lens is turned to the view finding position at the same time and by the same movement of the turret. This correspondence of lenses optically and their use on a turret camera in association with one another were not new features, but view finder lenses had not previously been attached to the turret itself. What is claimed to be both new and patentable is the association of these two kinds of lenses on the turret in such relative position that the operator's selection of the picture taking lens which he desires to use will include without more on his part the selection of the proper finder lens to use with it and the putting of both lenses in operative position by the same movement of the turret. Formerly the operator of a turret camera could turn only a picture taking lens into operative position by turning the turret. If he used the cheaper finder lens he had to select the right one from a supply which he carried and insert it manually in the place provided on the camera for its use.

Mounting two or more picture taking lenses on the same turret was, however, old. It was old practice so to mount them that when one was brought into picture taking position by rotation of the turret another would by the same turret movement be placed before the focusing tube. There it could be used for view finding, though that was not common practice. Ordinarily the operator used a removable finder lens as above stated. There was then, of course, the possibility that he might be careless or neglectful and so not always have his view finder lens match his picture taking lens as it should. The patented construction of the turret eliminated not only the need for the manual changing of the finder lens but also the possibility that the operator might by mistake or omission use lenses improperly matched, as he otherwise might do, whether the turret was on a view camera or on a motion picture camera.

Before explaining in greater detail what the patentee disclosed and claimed, it should be helpful to describe some of the prior art in the turret camera field. Such cameras differ from the more common non-turret type only by having a turret which carries lenses of varying focal lengths. The turret camera takes pictures in the well known way the ordinary camera does but is more adaptable to varying photographic conditions because of its multiple lenses. Changing lenses in the same camera is the equivalent of changing cameras, as conditions may require, within the range of such lenses as are mounted on the turret.

Many years before the patentee developed his turret the defendant, which is a well known manufacturer of photographic apparatus, made and sold a good kind of turret camera, one of which was introduced in evidence as Exhibit E and will be so called herein. It had a rotatable turret on which could be mounted a maximum of four picture taking lenses, though it was usually sold equipped with one or two only and with closures in the remaining openings which the purchaser could remove if and when he desired to incur the expense of putting additional lenses on the turret. This turret had a suitable locking device so that when it was turned to any station it would remain in that position until the lock was released. As all picture taking lenses should be in focus when used, there was a focusing station for that purpose with a focusing tube behind it fitted with the usual ground glass on which the image would appear inverted. A critical focusing station which was also provided was a refinement which for present purposes has no significance. The focusing station was placed directly opposite the picture taking station and in the same horizontal plane. As the camera was designed for use on a

tripod and was large in comparison with some common portable cameras, the distance between the focusing station and the picture taking station was comparatively great also. If the lens was put in focus at the focusing station and then turned to the picture taking station, the picture taken would show objects seemingly somewhat displaced from the position in which they appeared on the ground glass at the focusing station. This would be so because the angle of observation would vary with the change in space of the point of observation. Such a change of the point of observation creates what is known as an error due to parallax, and when the elimination of such error is desired means for that purpose may be provided.

In Exhibit E the defendant eliminated error due to parallax by making the camera slidable on its tripod so that after a lens had been focused and turned to picture taking position the camera could be so moved as to return the lens to the same point in space that it had occupied while being focused. Then the correct finder lens for its focal length was manually inserted in the finder tube and the camera was ready for use. The same procedure would be repeated whenever a lens was changed. As a lens suitable for picture taking always moved into position in front of the focusing tube when a lens was moved by rotation of the turret into picture taking position, the lens at the focusing station in Exhibit E could be used for view finding and there was some evidence that it was at times so used. Exhibit E, however, is not a complete anticipation of the patent in suit because its turret carried no finder lens as such and had no part whatever in placing an optically correct finder lens, as distinguished from a picture taking lens, in position for use as a finder. What it does show to be old is the turret of the type of the patent, carrying picture taking lenses which could by rotation of the turret be simultaneously moved into position, where the one in front of the focusing tube could be used for a finder in cooperation with the other at the picture taking station.

Moreover, it was old before the patent in suit not only to make a camera with a turret carrying multiple lenses which came successively into picture taking position as the turret was rotated and were locked there but also to provide each with its own opening located nearby on the turret for use as a finder. As the finder holes moved with the lenses when the turret was rotated, each finder hole stopped in position for use when its adjacent lens reached picture taking position. This was shown in the French patent No. 570,568 granted to Debrie on January 17, 1924. Debrie's camera did not have finder lenses and though it had a means for focusing the picture taking lens his method of doing it is not made altogether clear. His turret not only was rotatable but was movable axially and had to be so moved to permit rotation. While it did not anticipate, it did disclose a camera turret carrying finder holes, instead of finder lenses, associated with picture taking lenses in practically the same way as the matched lenses were grouped on the turret in the patent in suit. They were movable simultaneously in the same way by turning the turret. Although Exhibit E and Debrie's patent do not exhaust the prior art, they will serve well enough as the background against which the patentee's disclosure may be viewed in determining whether his improvements amounted to invention.

Owens, who is skilled in the art and has been granted a number of patents in this field, stated at the beginning of his specifications, "This invention relates to improvements in a lens turret for photographic cameras, the principal object of the invention being to provide in combination with cameras of either the ordinary 'view' or of the 'motion picture' variety, a lens turret or mount for a plurality of lenses of different focal lengths by means of which the particular lens desired for taking any given picture or motion picture may be brought into operative position.

"Other objects and advantages of the invention will appear as the description proceeds."

The manner in which his turret was made rotatable and was locked in station positions by an old type spring pressed detent need be described but briefly. He screwed a stationary disk on the front of his camera and on it put his rotatable turret mounted on a pintle placed at the center of the stationary disk. The turret had a flange which overlapped the edge of the disk to exclude light and to act as a bearing. He mounted three picture taking lenses of different focal lengths on the turret, "adapted to be independently focused by rotation of its supporting barrel or mount in the common and well known manner."

Then, and this is the gist of what is now said to be his invention, he matched each with a finder lens so placed on the turret that its rotation would bring such a matched pair of lenses into operative position simultaneously. Thus when the turret was rotated to bring any one of the picture taking lenses into exposure position where it would be in alignment with the film in the camera, its corresponding finder lens would be in position in front of the stationary finder tube. Both would be locked there by the action of the spring pressed detent until the operator released the detent, as he would when he wanted to use another picture taking lens with its corresponding finder lens. In this way the patentee disclosed and put into practice a method for the automatic selection and positioning of the proper finder lens when the operator turned a picture taking lens into operative position after first selecting and focusing the latter at a separate focusing station provided for that purpose.

As complete anticipation was not shown, decision as to validity here turns upon whether the patentee's contribution to the art amounted to invention in the light of what was needed to make the changes. What was needed was, indeed, very simple both in concept and in execution. No more had to be done than to place a finder tube behind the turret, as the focusing tube had been placed in Exhibit E, and to use a turret in which suitable finder lenses had been set in holes which corresponded to the finder holes of Debrie's turret. The result was a little foolproofing of the camera so equipped. Such changes as these may make good selling points when they are embodied in something manufactured for sale and may be otherwise worthwhile but they are not worth a patent. They are produced by the skill of the calling which makes the calling itself a skilled one rather than by that intangible something more which distinguishes an invention from change alone. And for precisely that reason no valid patent can be granted to lift them above the merely skillful level of their origin and put them into the class of lawful patent monopolies. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Ternstedt Mfg. Co. v. Motor Products Corporation, 6 Cir., 119 F.2d 834; Ronning Mach. Co. v. Caterpillar Tractor Co., 7 Cir., 129 F.2d 70; Connecticut Paper Products v. New York Paper Co., 4 Cir., 127 F.2d 423.

Though the defendant has also argued that all the claims of the patent are invalid because there was a failure to comply with the provisions of Rev.Stat. § 4888, 35 U.S.C.A. § 33 and Rev.Stat. § 4892, 35 U.S.C.A. § 35 and that in any event there was no infringement, we find it unnecessary to deal with those subjects on this appeal.

Decree affirmed.