SWANSON MFG. CO. et al. v. FEINBERG-HENRY MFG. CO., Inc., et al.

No. 112.

Circuit Court of Appeals, Second Circuit.

Feb. 6, 1945.

Munn, Liddy & Glaccum, of New York City (John H. Glaccum, of New York City, and Langdon Moore, of Washington, D. C., of counsel), for plaintiffs-appellees-appellants.

Irving F. Goodfriend, of New York City, for appellant Feinberg-Henry Mfg. Co., Inc.

Jacob Goldberg, of New York City (Orville N. Greene, of New York City, of counsel), for appellant Columbia Mfg. Co.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiffs are an Illinois corporation and its president, who is the patentee and the owner of United States Patent No. 2,-185,359 granted on January 2, 1940, on an application filed April 25, 1938, for a coin purse. The corporation is the exclusive licensee under the patent. The defendant Feinberg-Henry Mfg. Co., Inc., is a New York corporation, the defendant Columbia Manufacturing Company is a partnership consisting of Harry Behrman and Morris Behrman, and the defendant E. Behrman & Co. is a partnership consisting of Emanuel Behrman and Miriam Behrman. All the individual defendants are residents of New York and all the defendants are doing business in the City of New York. A consent decree has been entered which has disposed of the case in so far as the original defendants, other than those just named, are concerned.

The amended complaint alleged the infringement of the claims of the above patent and unfair competition. The trial court held invalid all the claims in suit, Nos. 4, 5 and 6, and found that defendants Feinberg-Henry Mfg. Co., Inc., and Harry Behrman and Morris Behrman, partners who will hereinafter be referred to as Columbia, had competed unfairly with the plaintiffs in the sale of coin purses. From the judgment entered below the plaintiffs and defendants Feinberg-Henry Mfg. Co.,

502

Inc., and Columbia have appealed but no reversal is sought of the judgment which was entered in favor of the partners doing business as E. Behrman & Co.

The patent covered coin purses, with especial reference to those having "zipper" means for closure, which were made of leather or other suitable material in two sections held together by the material along the one side which formed a hinge where there was no part of the "zipper". The inside of the purse contained pockets on either side for keys, bills, or whatever the user could, and cared to, carry in them, but the distinctive feature of the purses was a coin rack provided with coin slots, one of which was for each of the American small coins up to a quarter. Purses with coin racks were not new, as the prior art well shows. Various kinds of them are disclosed in several patents. Tubben's French Patent No. 329,983, Nissl's German Patent No. 19,-059, and the United States Patent granted to Willis in 1914 show some of them. Coin racks were also old, as is shown by United States Patent No. 659,228 granted to Haynes. A prior use by plaintiff Swanson himself embodied most of the features of the patented purse and it will be adequate so far as details are concerned to point out the differences between that prior use and the patent to show what advance over the prior art was patented. The patented purse was made with a rack, preferably of plastic, which had an inclined bottom for each of the slots or grooves to tilt the coins and make them easier to remove. They were thus made to overlap and were the more readily taken out by pressure of the thumb upon them through an opening in the plastic, and by cooperating finger pressure on the opposite side where needed. The outside of the bottom of the rack was also inclined or beveled, and a part of the material forming a pocket in one of the sides of the purse was extended beyond the closed bottom of the coin rack for a hinge. This construction permitted the rack to swing freely from side to side within the purse, and because the attachment of the hinge was in effect an inset there was no widening of the bottom of the rack by the hinge and no consequent added bulging of the purse at that point when the latter was closed. At the open ends of the coin grooves there were detents to prevent the coins from falling out of their own weight, but the restraining effect of the detents was easily overcome by pressure of the thumb and finger when removal was desired. These detents were either little nubs of plastic on the inside of the open ends of the grooves, whose sides would yield to allow the removal of the coins, or were little springs whose resiliency permitted removal.

The combination purse and coin rack of Swanson's prior use had the rack, which was of metal, attached to the purse near the open end of a pocket where it would swing within the purse. It had grooves with flat bottoms which would not make the coins in them overlap, and the outside of the bottom was neither beveled nor attached to the hinge having any insetting of the latter, and it had detents which were, indeed, common in the prior art. Whether or not the claims in suit are invalid depends upon whether any invention was disclosed in the specifications which show the above-mentioned changes from the prior use. Nothing turns upon the use of a plastic coin rack instead of a metal one. The claims do not cover that mere substitution of one material for another. There was nothing new per se in making the bottom of the grooves slanting to give the coins in the slot that position relative to its sides. That was shown in the patent granted to Martine in 1928, which was for a savings bank made with grooves to hold coins as they are held in a coin rack, and the same thing is shown in the patent granted to Buckner on June 7, 1938, on an application filed October 20, 1933, for a coin container having trays for holding coins in inclined rows. What was lacking in the prior art were the beveling of the outside of the bottom of the coin rack and its attachment to a hinge of material integral with the closed bottom of a pocket in the purse. Yet even this extension of the pocket material to make a hinge was not new, for in Penta's patent granted in 1935 a card holder is hinged to the cover of a bill fold in a similar way; and as the trial judge found, "Patent No. 1,037,264, to Kimmel shows a foldable bill purse having an identification card holder, secured to the lining at the interior of the purse adjacent to the hinge part, between its folds near the closed end of the pocket on the centre fold, in a manner similar to that by which the coin rack of the patent is secured to the purse."

■ Thus it appears that, while there is no complete anticipation of the combination purse and coin rack which was disclosed

and claimed in the patent in suit, all of what few changes were made from the prior use had been foreshadowed by what had been done except perhaps the beveling of the outside of the bottom of the rack, and that was so simple an operation that it is but commonplace to say that one may fasten a hinge on such a coin rack on a bevel or not, as one pleases, without even approaching invention. The dismissal of the complaint for patent infringement on the ground that the claims in suit were invalid because no invention was disclosed in the patent was right. Derman v. Stor-Aid, 2 Cir., 141 F.2d 580; Owens v. Bell & Howell Co., 2 Cir., 143 F.2d 115; Picard v. United Aircraft Corporation, 2 Cir., 128 F.2d 632.

■■■ The plaintiffs unsuccessfully attempted to prove in support of their cause of action for unfair competition that the purses they manufactured and sold in combination with the coin rack already described were of such size, shape and general appearance and had been so advertised and sold by them that they had acquired a secondary meaning. The court was clearly right on the evidence in finding that there was no such secondary meaning. Without that or patent protection it was not unfair competition merely to copy the plaintiffs' purses and sell duplicates of them. Electric Auto-Lite Co. v. P. & D. Mfg. Co., 2 Cir., 109 F.2d 566; Cheney Bros. v. Doris Silk Corporation, 2 Cir., 35 F.2d 279.

Both appellant Feinberg-Henry Mfg. Co., Inc., and Columbia did more than that, however. It appeared that the plaintiff corporation began to sell its purses with plastic coin racks in August 1938 with its trademark "Jiffy," which it had registered in 1928, stamped on the rack but with no distinguishing mark on the outside of the purse. Soon it began to put printed matter into the purses containing copyrighted directions for using the "Jiffy," together with illustrations of it.

It also made and sold a purse called by the trade name "Koin Kaddy," a combination purse and metal coin rack which was put on sale with a display card, on the front of which was printed an eye-arresting figure of a little man having the partly opened purse for his body with "Koin" in comparatively large letters on a streamer extending out from his right shoulder and "Kaddy" in similar letters on one extend-

ing from his left side. There were short sentences describing the advantages obtainable from the use of the purse, of which the only one needing mention is "The new smart way to carry money for men, women and children." On the reverse side were directions for using the purse which were amplified by an illustration of it held in a recommended way for the insertion of coins in the rack. Swanson Manufacturing Co. had registered a copyright and printed a copyright notice on the card.

Feinberg-Henry sold a combination purse called "Mon-E-Pak" by means of a display card without the "Koin Kaddy" name and little man on it but otherwise similar in certain respects to the plaintiffs' card. This card had on one side at the top the word "Mayflower" and underneath it in large letters "Mon-E-Pak." Below was an illustration of the purse held in the same manner as that in the illustration on the "Koin Kaddy" display card and which showed the same view of the purse. The illustration of the purse on the "Mon-E-Pak" card was not an exact copy of the "Koin Kaddy" picture, but the differences were so minor that the general appearance was the same. In prominent letters below the illustration were the words, "New smart way to carry money for men, women and children." On the reverse side of the card the illustration of the purse was repeated below "Mon-E-Pak" in large letters and under the illustration were printed instructions in which are found to a substantial extent the language used in the instructions on the "Koin Kaddy" card. In the use of this card Feinberg-Henry was found to have competed unfairly.

■■■ It has argued earnestly that the corporate plaintiff cannot maintain its action for unfair competition since it has a registered copyright on the card and that since it elected to obtain the copyright its only remedy must be an action for infringement. In support of that contention it relies on cases like Fashion Originators Guild v. Federal Trade Commission, 2 Cir., 114 F.2d 80, holding that an author loses on publication the common law rights in his literary property and has only such rights to exclusive re-publication as he may obtain by virtue of a registered copyright. Such interpretations of copyright law are not applicable to the issue in this case in the way this defendant seeks to make them. We may assume, arguendo, for present purposes that

the registered copyright has been infringed. Even so the owner could waive that tort and sue to recover for unfair competition which it could prove the defendant had practiced in palming off its goods for those of the plaintiff by means of the copyrighted material. The commission of two torts at the same time did not make the defendant immune from suit upon either, or both for that matter, at the election of the party wronged. Compare Underhill v. Schenck, 238 N.Y. 7, 14, 143 N.E. 773, 33 A.L.R. 303. Nor is this an instance analogous to the attempt to obtain a design patent on a label already registered under the copyright law, as in Louis De Jonge & Co. v. Breuker & Kessler Co., 3 Cir., 182 F. 150.

■ Furthermore, it is now of no consequence that the formal pleadings may not have directed attention to this particular issue of unfair competition. Issue was joined on the complaint alleging unfair competition and the evidence in respect to the display cards was properly admitted. The case was reopened on motion of the defendants to permit the introduction of evidence to rebut that of the plaintiffs on this issue and the parties were given their day in court fairly and fully. Though the defendants who have appealed did not expressly consent, they impliedly did so in moving to reopen and Rule 15(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is applicable.

■■ There was nothing about this display card of the plaintiffs which was found to have a secondary meaning except the words "The new smart way to carry money for men, women and children." Nor could there have been on the evidence. The card was not printed and used until about March 1939 and the display card of the appellant was put in use about six months later. But the trial judge in a second opinion filed after the case was reopened made clear the reason which led him to hold that Feinberg-Henry had competed unfairly with the plaintiffs in using a display card with the last above quoted words. He there said, after noting "other manufacturers have used the words 'new way' describing the usefulness of their products," that the slogan "The new way to carry money" had been used on the corporate plaintiff's letterhead "in association with its Jiffy Coin Holder in 1934 and the plaintiff had used that slogan and another—'A new smart way

to carry money'—on its boxes and counter cards and in its advertising, through the years." He then said, "The slogan became identified with the plaintiff's Jiffy Coin Holder purses in the trade and in the mind of the purchasing public." We do not find evidence in the record which shows that this descriptive phrase had been so used by the corporate plaintiff that to purchasers of purses it meant the plaintiff's purses rather than those of another in respect to which the phrase was just as descriptively accurate. The evidence on that subject was so much to the contrary that the statement in the opinion as to the identification of the phrase with the purses of Swanson Mfg. Co., Inc., if treated as a finding, though the findings of fact filed do not go that far, must be held an unwarranted assumption which was clearly erroneous as a finding of fact. Consequently the distinctive trademark of Feinberg-Henry Mfg. Co., Inc., ("Mayflower") and its distinctive trade name for its purse ("Mon-E-Pak"), which were printed on the card, served to identify its purses as its own and to prevent confusion from being created by the display card, which would bring about the palming off of its purses for those of the plaintiffs. Without the requisite proof of such confusion and of a resulting palming off, actionable unfair competition was not shown. Lewis v. Vendome Bags, 2 Cir., 108 F.2d 16, 18; Airolite Co. v. Fiedler, 2 Cir., 147 F.2d 496.

Appellant Columbia sold the same sort of combination purses as did Feinberg-Henry. The coin racks used in them were the "Mayflower" racks made by Feinberg-Henry. It had among others two trade-marks, "Wales" and "Scotch", one or the other of which it placed on the purses it sold. It was not shown to have competed unfairly merely by selling such purses, for what has been said on that subject is as applicable to Columbia as to Feinberg-Henry.

■ Columbia copied a display card used by the plaintiffs which was foldable into a display carton and was different from the card in large part copied by Feinberg-Henry. This card or carton as used by the plaintiffs had upon it an illustration of their coin purse, the phrase, "New Way To Carry Money," and underneath "Jiffy Coin Purse." The only change Columbia made was to substitute its name "Scotch" for "Jiffy." Had it been proved that the display card itself without the plaintiffs' mark

"Jiffy" had a secondary meaning, actionable unfair competition would have been shown; but without such proof the attempt to charge this appellant with liability failed for the same reasons that it did in connection with the copying by Feinberg-Henry.

This appellant, however, went one step further. It had been a distributor of the plaintiffs' "Jiffy" purses to the retail trade for some time until into 1936. Beginning in 1937, it sent to retailers of those purses a card which bore two illustrations of a combination purse and coin rack. one with a "zipper" closure and one with a tab and snap button fastener. The card bore the words "Scotch Coin Purses" in large letters over the words "your change in a" in smaller letters, and underneath this phrase was the word "Jiffy" in a little the largest letters of all and in a line by itself. The card was adapted for use as an order blank, having spaces to be filled in with the number of dozens of each type of purse desired and blank spaces for the name and address of the purchaser.

The trial judge reached the conclusion which the evidence amply warranted that this use of the phrase "Scotch Coin Purses" with the word "Jiffy" would indicate that they meant the same thing. Since it was proved that the plaintiffs' purses "had been known as 'Jiffy' purses for years and the trade-mark 'Jiffy' had been registered since 1928," the judge correctly treated this use of "Jiffy" as confusing and as a deliberate attempt to mislead purchasers and to share unlawfully in the good will of the plaintiffs. Had Columbia merely desired to advertise the fact that one could get change quickly from a "Scotch" coin purse, words other than "Jiffy" were available for its use in saying so. That it chose instead to use the plaintiffs' word "Jiffy" is ample evidence that Columbia intended to trade on the plaintiffs' good will.

Some question has been raised as to a small amount of costs taxed for the plaintiffs. Our disposition of this appeal makes that question moot in so far as Feinberg-Henry is concerned. The costs will have to be retaxed as a result of our decision on this appeal and we leave that matter open for decision if and when it is needed after final action by the district court.

Judgment on the cause of action for patent infringement affirmed.

Judgment against Feinberg-Henry Mfg. Co., Inc., on the cause of action for unfair competition reversed and complaint dismissed.

Judgment against Harry Behrman and Morris Behrman, partners doing business as Columbia Manufacturing Co., on the cause of action for unfair competition modified to enjoin only the use of the word "Jiffy", and cause remanded for an accounting, but only for those damages and profits which are shown to be attributable to their unfair use of the word "Jiffy."