TOURNEAU et al.

v.

TISHMAN & LIPP.

United States District Court,
S. D. New York.

July 15, 1953.

**594**

H. C. Bierman, New York City, for plaintiffs.

Ostrolenk & Faber, New York City, for defendant.

LEIBELL, District Judge.

This is a suit for infringement of Design Patent No. D–161,296 and for unfair competition. The application for the patent was filed April 19, 1950. The patent was issued on December 19, 1950 to Henry K. Tourneau and by him licensed to Tourneau, Inc., as sole licensee. The complaint alleges that defendant is infringing the patent and causing damage to plaintiffs because of the inferior quality of defendant's alleged imitations. The complaint further alleges that plaintiff's design has acquired a secondary meaning in the trade and that defendant is competing unfairly through its advertising and sale of items embodying plaintiff's design.

Defendant by its amended answer challenges the validity of the patent, claiming that the invention described therein was in public use for more than one year prior to plaintiff's application; that it is functional rather than ornamental; that it is lacking in novelty and invention; and that it was anticipated by the prior art. In addition defendant counterclaimed for judgment of invalidity and for damages arising from plaintiff's alleged dissemination of statements to the trade that defendant was an infringer, as well as for an injunction prohibiting plaintiffs from issuing said statements. On the trial of the action, the counterclaim was withdrawn. The issue of infringement is not now contested by defendant.

That leaves only two issues in this case—the validity of the patent and defendant's alleged unfair competition.

The individual plaintiff, a citizen of the United States and a resident of New York City, has been in the merchandising end of the watch business for thirty-five years. He has a store located at 431 Madison Avenue, New York, and a "shop" at 47th Street and Second Avenue, New York, New York, where he manufactures watches and bracelets. Apparently the corporate plaintiff, a New York corporation, is the entity through which plaintiff presently conducts this business. The defendant partnership maintains its place of business at 105 West 47th Street, New York, New York. It has been in existence about 2½ years and manufactures jewelry, particularly bracelet watches—watch cases and double strand block bracelets.

Alleged invalidity of plaintiffs' patent.

Plaintiff's patent purports to be for "a new, original and ornamental Design for a Combined Watch Case and Brace-

let". The patent contains no specifications other than the accompanying drawings. These disclose a watch band or bracelet consisting of four strands, two of which extend from each clasp of the bracelet to the casing of the watch. The strands are adjacent to one another at the two clasps of the bracelet and diverge gradually till they meet the casing to which they are soldered. Each strand is composed of small, solid blocks and in the jewelry trade such strands are known as "sticks". The "bezel" of the watch, the portion of the watch casing on either side of the watch face extending in the same direction as the bracelet, has been "scored" with markings to make it correspond in appearance to the blocks of the bracelet. This creates the illusion that the bezel is a continuation of the bracelet and a part of the bracelet, and that each strand of the bracelet runs from clasp to clasp, with the watch suspended between them.

The blocks as used by the corporate plaintiff are generally of the same precious metal as the watch casing, although that is not essential. Frequently the blocks are perforated to permit the mounting of diamonds or other precious stones thereon. Tourneau, Inc. also markets bracelets in which the blocks are slit along the side so that each strand seems to consist of two layers of blocks. This type of block is known as an "airline block". According to the plaintiff, Henry K. Tourneau, the use of such blocks increases the flexibility of the bracelet.

In the course of his testimony on the trial of this action, Mr. Tourneau stated in effect that his design, which he named "Tournette", was intended to accomplish a graceful blending of watch case and bracelet bands, so that the length of each band from clasp to clasp would appear as one, uninterrupted line.[1] That indeed is the essence of plaintiff's design.

Plaintiff's Exhibit 1 is a catalogue of the merchandise of seven jewelry manufacturers including defendant. It was published in June, 1952. Pages 44 and 45 of said catalogue contain representations of a number of combination watch cases and bracelets made by defendant. All of these combinations embody plaintiff's design. Defendant does not really dispute this, nor does defendant claim that any of its combination watch cases and bracelets were produced prior to the issuance of plaintiff's patent.

In July of 1951 about one month after defendant commenced the manufacture of block bracelets, Irving Tishman, a member of the defendant partnership, submitted to Mr. Tourneau sample sticks of blocks which the defendant was then manufacturing. According to Mr. Tishman he knew that Tourneau, Inc. was selling watches with the "Tournette" design and he felt that his "sticks" might be usable. Tourneau ordered from the samples submitted by Tishman, but returned a portion of the order because the manufacturer who assembled the combination of watch case and bracelet for Tourneau complained that defendant's sticks were not satisfactory. At the time Tourneau placed the order with Tishman, he explained his design to Tishman and represented himself to be the originator thereof. It is not disputed that subsequent to this business transaction defendant entered upon the manufacture of its alleged infringing articles.

Defendant contends that the design in suit was in use at least a year prior to the issuance of the Tourneau patent. In support of this contention defendant offered in evidence (Ex. B) a copy of a

---

1. "I wanted to create a bracelet and watch combination, a delicate, graceful combination with graceful lines, not too heavy looking. I wanted to go away from the old style, where the attachment is not a part of the watch but is just attached to the watch.

"I wanted to go away from the bulky appearance and blend the bracelet and the case in such a way that it would look like one unit and it should have a nice, graceful curve from the top view and from the side view, and it should look very simple and regular, a block of gold from one end to the other, and give a very plain, fine appearance."

Tourneau advertisement which appeared in the New York Times of January 16, 1949. The product advertised did not utilize the design in issue. The combination watch and bracelet depicted in the advertisement contained loops on the side of the watch case through which the flat bracelet strands passed. The strands were not made of single blocks and they ran alongside the watch case. They were not attached to the forward and rear ends of the case. On the contrary they were clearly disconnected from the watch case. Furthermore, there was no scoring on the bezel of the case. Exhibit 13 is an example of the watch case and bracelet manufactured by plaintiff and shown in Exhibit B. A comparison of Exhibit 13, which was not a success, with the design patent (Ex. 2) shows that the main feature of plaintiff's patent was not embodied in Exhibit B and Exhibit 13.

Defendant also asserted that other jewelry manufacturers have produced combinations like plaintiff's. This was amply demonstrated. (Ex. D) But defendant's proof in respect to the time when these close copies first appeared on the market was vague and indefinite and totally insufficient to show that any of them were made before the Tourneau patent was applied for. Defendant particularly stressed a watch case and bracelet manufactured by Irving Pugatch, as embodying a design substantially like that of the plaintiff's. It is very similar but not exactly like plaintiff's. The bracelet of the Pugatch combination consisted of twin strands of blocks with diamonds mounted thereon. The bezel of the watch case however was not so constructed as to correspond exactly to the blocks of the bracelet. The bezel was narrower than the bracelet and it was not "scored". Consequently the continuity of the strands was broken when the strands reached the case and in that respect the Pugatch design differed from plaintiff's design. Moreover, the proof offered by defendant to establish the time when the Pug-

atch watch was first marketed is inconclusive.

Leo Lipp, a partner in the defendant partnership, testified that he first saw the Pugatch creation in late 1948 or early 1949. Lipp's testimony in respect to the time when he originally saw the Pugatch watch and bracelet was not corroborated in any way and is not persuasive. No one was produced from Pugatch's shop to testify on this question. The item photographed on Exhibit D (7th line) was obtained by defendant in October 1952 to be photographed for use at this trial. I have concluded that Pugatch's item was not produced or known to the trade before plaintiff's design was advertised and the patent applied for.

The difficulty of obtaining a design patent was recently commented upon by the Court of Appeals for this Circuit. See Chas. D. Briddell, Inc. v. Alglobe Trading Corp., 2 Cir., 194 F.2d 416. The prime requisite to the validity of such a patent is that it be the product of invention, of "inventive genius". Smith v. Whitman Saddle Co., 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606; Neufeld-Furst & Co. Inc. v. Jay-Day Frocks, Inc., 2 Cir., 112 F.2d 715; A. C. Gilbert Co. v. Shemitz, 2 Cir., 45 F.2d 98; Nat Lewis Purses Inc. v. Carole Bags, Inc., 2 Cir., 83 F.2d 475. It is not sufficient that the design be novel, ornamental, or pleasing to the eye. General Time Instruments Corp. v. U. S. Time Corp., 2 Cir., 165 F.2d 853, certiorari denied 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770. "The conception of the design must require some exceptional talent beyond the range of the ordinary designer familiar with the prior art". Gold Seal Importers, Inc. v. Morris White Fashions, Inc., 2 Cir., 124 F.2d 141, 142. Krem-Ko Co. v. R. G. Miller & Sons, Inc., 2 Cir., 68 F.2d 872. "An unstartling regrouping of old elements" in a design patent "which does not 'rise above the commonplace' or demonstrate 'originality which is born of the inventive faculty'" may not be called "'invention' for the pur-

poses of patent validity." Knickerbocker Plastic Co. Inc. v. Allied Molding Corp., 2 Cir., 184 F.2d 652, 654.

■ The application of the above rules to the facts in the case at bar compels the conclusion that plaintiff's patent is invalid. The designer, Tourneau, has taken two ideas old in the art (1), the use of sticks of blocks for watch bracelets, and (2) the scoring of watch case bezels to carry out an element in the bracelet, and has arranged them to achieve a different and pleasing effect, which is ornamental. But the end result does not represent "originality born of inventive genius". It shows "talent of the adapter, rather than the art of the inventor." General Time Instruments Corp. v. U. S. Time Corp., supra. [165 F.2d 854] It showed no "wide departure from the past". Belding Heminway Co. v. Future Fashions, Inc., 2 Cir., 143 F.2d 216, 217.

■ Apparently the mechanical production of the plaintiff's combination entailed some difficulty. That has no bearing on the question before the court. The design as a whole, its general effect on the eye, See Gold Seal Importers v. Morris White Fashions, Inc., supra, irrespective of the mechanical ingenuity exerted to produce said effect, is what is of importance. A. C. Gilbert Co. v. Shemitz, supra.

Plaintiff's design patent does not meet the tests laid down in the cases decided by the Court of Appeals of this Circuit and it is accordingly held to be invalid.

There would be no doubt about defendant's infringement, if plaintiff's patent were valid, because defendant's bracelet watch is so similar to that of plaintiff. A. C. Gilbert Co. v. Shemitz, supra. Both designs "have substantially the same effect upon the eye of an ordinary observer who gives the matter such attention as. purchasers usually give." Gold Seal Importers v. Morris White Fashions, Inc., supra [124 F.2d 141]. But there can be no infringement, if the patent is invalid.

## Alleged Unfair Competition of Defendant

■■ The mere copying of a design not subject to the protection afforded by a patent, does not in itself constitute unfair competition. Lewis v. Vendome Bags, Inc., 2 Cir., 108 F.2d 16; Airolite Co. v. Fiedler, 2 Cir., 147 F.2d 496, certiorari denied 326 U.S. 726, 66 S.Ct. 32, 90 L.Ed. 431; Swanson Mfg. Co. v. Feinberg Henry Mfg. Co., 2 Cir., 147 F.2d 500; General Time Instrument Co. v. U. S. Time Corp., supra. Since there is no proof in the case at bar that defendant is palming off its goods as those of plaintiffs', the plaintiffs, in order to sustain their charge of unfair competition, must show that their design has acquired a secondary meaning associated with some sole source, and that the sale of defendant's goods will in all likelihood cause confusion in the market. Lucien Lelong, Inc. v. Lander Co., Inc., 2 Cir., 164 F.2d 395; General Time Instrument Co. v. U. S. Time Corp., supra; Chas. D. Briddell, Inc. v. Alglobe Trading Corp., supra. To establish secondary meaning plaintiff must demonstrate "that (1) the design is a mark of distinction identifying its source, and (2) purchasers are moved to buy the article because of its source." Lucien Lelong, Inc. v. Lander Co., Inc., supra [164 F.2d 397]. Plaintiffs have been unable to show that their design has acquired a significance capable of meeting the above test.

■ From early 1950 to 1952 the corporate plaintiff sold 500 to 1000 watches embodying the design in suit. The design was advertised to the jewelry trade and also to the general public through advertisements in New York newspapers (The New York Times and The New York Herald Tribune) and in some magazines with national circulation. In all, 24 copies of advertisements dating from early 1950 to June 1952, were offered in evidence, with Mr. Tourneau's explanation that the exhibits did not represent the full scope of plaintiff's advertising. But no evidence

was submitted showing any broader scope, nor was there proof of the amount of money expended by plaintiffs for advertising. The above, which represents the extent of plaintiff's effort to establish secondary meaning, does not warrant a finding that the public associated with a common source those watch and bracelet combinations which are like plaintiff's design, or that the public is moved to purchase said competing combinations believing that they come from the same source. Chas. D. Briddell, Inc. v. Alglobe Trading Corp., supra. Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299, 300.

Such a finding would be unwarranted for this additional reason. To the ordinary consumer a watch is not an every day purchase; nor for that matter are watches even an occasional purchase. The watches having the "Tournette" design and sold by Tourneau, Inc. were expensive. The advertisements show that they ranged in price from $295 to $2750. Their consumer market was necessarily limited to people of much more than average means.

There was testimony that other manufacturers had been selling watches with plaintiff's design since 1951. Defendant admitted that it was one of these. That would require a showing that plaintiff's design had acquired a secondary meaning within a period of approximately one year prior thereto. Within the period 1950–52 plaintiff sold at the very most 1000 "Tournette" watches. Long before the expiration of that period the market was being offered watches which copied the Tourneau design (Ex. D), many of them at cheaper prices. The multiplicity of similar products emanating from a variety of sources, coupled with the limited response plaintiffs' watches would evoke because of their high cost, also rebuts plaintiffs' claim to a secondary meaning.

█ A final point raised by plaintiffs is that defendant competes unfairly by advertising its products as "originals". There is no doubt that defendant did not originate the design. In that sense defendant's advertising may be considered unethical. But plaintiffs are not entitled to any relief in this action, since there is no showing that their design had acquired a secondary meaning. Plaintiff's design was not such a mark of distinction as identified its source. Retail purchasers were not moved to purchase it because of its source.

There is no proof that defendant in selling their bracelet watches represented them as plaintiffs'. Defendant was a manufacturer and sold to wholesalers, watch importers and some retailers, not to the general public. Defendant's customers knew their source. Defendant usually did not supply the watch movements. The wholesalers and watch importers who bought from defendant furnished their own movements. To retailers, the defendant probably sold the complete assembly; bracelet, watch case and movement.

Without secondary meaning or patent protection it was not unfair competition for defendant merely to copy plaintiffs' bracelet watches and sell duplicates of them. Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co., supra. There is no proof that any retailer sold any of defendant's bracelet watches and represented them as being manufactured by plaintiffs or that any of the purchasing public were led to believe that the bracelet-watch they were purchasing was manufactured by the plaintiff. There has been no proof in this case that "the public is moved in any degree to buy the article (the bracelet-watch) because of its source". The essential elements of a claim for unfair competition have not been established.

█ Plaintiffs' two causes of action, the one for patent infringement and the other for unfair competition, are accordingly dismissed. The dismissal is without costs and without the allowance of any attorney's fee to the defendant, because defendant deliberately copied plaintiffs' design for which a design patent had been issued and after plaintiff had employed defendant to make some of

the "sticks of blocks" used in the bracelet part of plaintiffs' design.

This opinion will serve also as the Court's findings of fact and conclusions of law under Rule 52(a), Fed.Rules Civ. Proc., 28 U.S.C.A.

Let judgment be entered accordingly.