**TROJAN TEXTILE CORP., Plaintiff,**

v.

**CROWN FABRICS CORP.,
Defendant.**

United States District Court
S. D. New York.
July 12, 1956.

Chester A. Lessler and Jerry Bauer, New York City, for plaintiff.

Kirschstein, Kirschstein & Ottinger, New York City, for defendant, Morris Kirschstein and David B. Kirschstein, New York City, of counsel.

DAWSON, District Judge.

This is an action tried by the Court without a jury for alleged violation of a design patent. The issues are (1) the validity of the patent and (2) whether there has been infringement.

The patent is design patent No. 164-922 dated October 23, 1951 for "a new, original, and ornamental Design for a Textile Fabric." The description of the invention is, according to the patent, "contained in the specification of which a copy is hereunto annexed and made a part hereof." The patent includes a plain view of a full width of a textile fabric showing the design and describes the design as follows:

"The seven stripes on the fabric gradually increase in width and density of shade from the selvage

at the top of the figure to the selvage at the bottom thereof."

The testimony showed that Bernard D. Gould, to whom the patent was issued, has been in the textile business for twenty-five years, primarily in connection with the designing and merchandizing of textile fabrics. He is the sole owner of all of the stock of the corporate plaintiff, Trojan Textile Corp., to whom he states he has licensed the above-mentioned patent.

Mr. Gould states that he designed the particular fabric in the middle of 1948 and applied for the design patent in March, 1949. He states that he received the patent on October 23, 1951. He arranged with Dan River Mills to make the product for him in 1949. He stopped selling the goods embodying this design which he called "Greybre Material" in 1950 because, he stated, material of the same design was being made by others in a lower price range and he did not wish to continue the marketing or distribution of his material until after his patent was established so that his price range could be maintained. He states that in September, 1952 he found a material embodying the same design which admittedly was manufactured by the defendant. On November 28, 1952, his attorney wrote a letter to the defendant protesting this infringement. This action was started on February 11, 1953.

Mr. Gould stated that he had purchased approximately 1,300,000 yards of goods embodying his patented design in about a year and a half after Dan River Mills started manufacturing it for him. He testified that by 1950, he had sold all that he had produced.

The plaintiff stated that the design was what is called an "Ombre Pattern" which is a pattern where the colors of the material go from shade to shade. Plaintiff stated that he was acquainted with Ombre Patterns and also with Ombre Patterns which went from selvage to selvage. He stated, however, that he had never theretofore known of or seen any fabric with Ombre Patterns where the stripes gradually increased in width

and density of shade; that the Ombre Patterns which he had previously seen had the different shades in equal widths; or the pattern was repeated. Several witnesses were called for the plaintiff who stated that they considered the patented design to be an original design, but none of them testified that the originality was that the stripes "gradually increase in width and density of shade from the selvage at the top of the figure to the selvage at the bottom thereof." Some of the witnesses said that the originality was in the blending of the colors or in the color combinations or in the method of manufacture of the particular fabric.

There was received in evidence a piece of cloth admittedly made by the defendant after the patent was issued. It was a piece of material which had five stripes rather than seven stripes. It was printed rather than woven. It was an "Ombre Pattern" where the stripes gradually did increase in width and density of shade from the selvage at one end of the material to the selvage at the other end.

The evidence and the exhibits showed that Ombre Patterns having a gradation of color and stripes have been well known in the art for many decades. The evidence and exhibits also showed that previous to the issuance of any patent herein, Ombre Patterns had run from selvage to selvage and that the number of stripes had varied and the width of the stripes had varied.

Certainly, the use of seven stripes rather than a greater or lesser amount of stripes is not an original invention. Nor is the fact that the stripes increase in density of shade from one edge to the other edge an original invention. Nor is the fact that certain stripes are of a greater width than others an original invention. These elements were admittedly well known in the art.

All that can be contended in connection with plaintiff's patent is that his invention was the coordination of an increase in width and an increase of the density of shade so that as the shades

became darker, the width became greater. Was this a patentable invention?

■ In order to get a valid design patent for an article of manufacture, the design must be an invention and must be "new, original and ornamental". 35 U.S.C. § 171.

■ In Patent Law, the term "original" has special reference to the inventive genius in creating the design. The inventor must have created a design that is essentially different and superior to a design that might be created by a person skilled in the art. The mere exercise of routine skill does not amount to a design invention. These requirements, although not specifically found in the earlier statutory law, were imposed by the Courts for at least a century prior to the enactment of the 1952 Patent Act. See Senate Report No. 1979, 82d Cong. (1952), 2 U.S.Code Cong. & Admin. News (1952) pp. 2399, 2410.

The 1952 Patent Code attempted to set forth these requirements in statutory language by providing that

"A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103.

■ It is clear that the requirement of invention for design patents is as high as it is for mechanical patents, and that the invention must rise sufficiently above the prior art in its uniqueness of composition and its aesthetic appeal as to constitute a true invention. Blisscraft v. Rona Plastic Corp., D.C.S.D.N.Y.1954, 123 F.Supp. 552, affirmed on opinion below, 2 Cir., 1955, 219 F.2d 238; Tourneau v. Tishman & Lipp, D.C.S.D.N.Y. 1953, 119 F.Supp. 593, affirmed on opinion below, 2 Cir., 1954, 211 F.2d 240.

The design of a fabric which coordinates an increase in width and an increase in density of shade so that as the shades become darker the width becomes greater seems to be old in the art. On December 23, 1941, a design patent was issued to John H. Abt (No. 130864) for a fabric design in an Ombre Pattern where the stripes increased in width and density of shade. In the Abt fabric, there were more than seven stripes and the pattern was repeated. However, if the central portion of the Abt pattern was cut out, it would be an exact duplicate of the design of the fabric in suit, except that there would be only four stripes instead of seven. Those stripes would, however, increase proportionately in width and density of shade.

Likewise, on October 18, 1932, a design patent was issued to William Wilhelm (No. 88007) for a textile fabric which showed in the central portion of the fabric an Ombre Pattern of seven stripes where the several stripes gradually increased in width and density of shade, although at the ends of the material, this pattern was not continued.

■ There appears to be nothing new about the so-called invention of plaintiff. The same design had appeared as parts of designs previously patented. In the previous designs, there had been as part of them a coordination of an increase in width and increase in the density of shade so that as the shades became darker, the width became greater. Certainly, it cannot be contended that an invention is made by merely cutting off the ends of other fabric designs and leaving only the middle portion thereof; and this is all that plaintiff's design amounts to.

Plaintiff's design patent does not meet the test laid down in the Patent Code of originality or invention and, accordingly, it is held to be invalid.

This opinion shall constitute the findings of fact and conclusions of law of the Court.

Let judgment be entered accordingly.