CRESCENT TOOL CO. v. KILBORN & BISHOP CO.

(Circuit Court of Appeals, Second Circuit. November 13, 1917.)

No. 26.

1. TRADE-MARKS AND TRADE-NAMES ⬅95(3)—UNFAIR COMPETITION—LIMITATION OF ARTICLES.

To entitle a complainant to injunctive relief because of the imitation by defendant of nonfunctional features of his product, it must be shown that such features have become associated by the public with him as the manufacturer or source.

2. TRADE-MARKS AND TRADE-NAMES ⬅93(3)—UNFAIR COMPETITION—INJUNCTION.

Complainant began in 1908 to make and sell an adjustable wrench of new and original shape, and by advertising has built up a large trade in the same, which has become known to dealers and consumers as the "Crescent" type of wrench. Each wrench has complainant's name as maker marked thereon, but it did not appear that its sale had been in any part due to its source, as distinct from its utility and neat appearance, when in 1910 defendant began to make and sell a similar wrench. Defendant did not use the word "Crescent," nor imitate complainant's packages, and each of its wrenches was plainly marked with its name as maker. Held, that such evidence was not sufficient to entitle complainant to a preliminary injunction against defendant for unfair competition.

Appeal from the District Court of the United States for the District of Connecticut.

Suit in equity by the Crescent Tool Company against the Kilborn & Bishop Company. From an order granting a preliminary injunction, defendant appeals. Reversed.

This is an appeal from a temporary injunction granted by the District Court for Connecticut on the 25th day of January, 1917, restraining the defendant pendente lite from manufacturing and selling its adjustable wrenches. The facts as set forth in the affidavits are substantially as follows:

The plaintiff is a New York corporation, organized in 1907 for the purpose of manufacturing tools, and has since that time been engaged in the manufacture among other things of pliers and wrenches. In December, 1908, it put upon the market an adjustable wrench, and has widely advertised the same from that time to the present. The wrench, on account of its appearance and new and original shape, pleased the public, and its sales grew rapidly from year to year, so that it became known to the jobbing trade and retailers and consumers as the "Crescent" type of wrench. Its main structural features were all old in detail. It was adjustable to bolts and nuts of different sizes somewhat after the manner of a monkey wrench, but it was nevertheless quite different mechanically from a monkey wrench. It had a straight handle of web and rib construction, spreading slightly from the neck to the end, with a hole in the end of the web by which it could be hung up. No adjustable wrench of precisely the same character had ever appeared upon the market. There had, however, been adjustable wrenches, some with straight handles, some with web and rib curved handles, and there had been other tools with straight web and rib handles, somewhat broader at the end

than at the neck. Plaintiff's name is plainly printed upon the web of the handle in raised letters.

.The defendant is a Connecticut corporation, organized in 1896 and engaged in the manufacture of wrenches and other hardware for some 18 years past. Some time in 1910 it began the manufacture of an adjustable wrench, which it called its "K & B 22½° adjustable." This is substantially a direct fac simile of the plaintiff's wrench, with the exception that the defendant's name appears upon the web in place of the plaintiff's as follows: "The Kilborn & Bishop Company, New Haven, Connecticut, U. S. A.," in distinct raised letters. The defendant made no effort to imitate the boxes or packages of the plaintiff's wrench, nor did it use the word "Crescent" in any way in its sale; but it did begin selling the goods in general competition with the plaintiff's wrenches until the order issued herein.

There is evidence in the correspondence between the plaintiff and its customers that confusion has arisen between the plaintiff's wrenches and the defendant's, customers having supposed that the Kilborn & Bishop wrench was a Crescent, but there was no evidence that the defendant in any way facilitated this confusion.

Harrie E. Hart, for appellant.

J. William Ellis, of Chicago, Ill., for appellee.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge. [1] The cases of so-called "nonfunctional" unfair competition, starting with the "coffee mill case," Enterprise Mfg. Co. v. Landers, Frary & Clark, 131 Fed. 240, 65 C. C. A. 587, are only instances of the doctrine of "secondary" meaning. All of them presuppose that the appearance of the article, like its descriptive title in true cases of "secondary" meaning, has become associated in the public mind with the first comer as manufacturer or source, and, if a second comer imitates the article exactly, that the public will believe his goods have come from the first, and will buy, in part, at least, because of that deception. Therefore it is apparent that it is an absolute condition to any relief whatever that the plaintiff in such cases show that the appearance of his wares has in fact come to mean that some particular person—the plaintiff may not be individually known—makes them, and that the public cares who does make them, and not merely for their appearance and structure. It will not be enough only to show how pleasing they are, because all the features of beauty or utility which commend them to the public are by hypothesis already in the public domain. The defendant has as much right to copy the "nonfunctional" features of the article as any others, so long as they have not become associated with the plaintiff as manufacturer or source. The critical question of fact at the outset always is whether the public is moved in any degree to buy the article because of its source and what are the features by which it distinguishes that source. Unless the plaintiff can answer this question he can take no step forward; no degree of imitation of details is actionable in its absence.

[2] In the case at bar it nowhere appears that before 1910, when the defendant began to make its wrenches, the general appearance of the plaintiff's wrench had come to indicate to the public any one maker as its source, or that the wrench had been sold in any part be-

cause of its source, as distinct from its utility or neat appearance. It is not enough to show that the wrench became popular under the name "Crescent"; the plaintiff must prove that before 1910 the public had already established the habit of buying it, not solely because they wanted that kind of wrench, but because they also wanted a Crescent, and thought all such wrenches were Crescents.

Upon the trial the plaintiff may, however, be able to establish this, and it·is only fair to indicate broadly the considérations which will then determine the scope of his relief. In such cases neither side has an absolute right, because their mutual rights conflict. Thus the plaintiff has the right not to lose his customers through false representations that those are his wares which in fact are not, but he may not monopolize any design or pattern, however trifling. The defendant, on the other hand, may copy the plaintiff's goods slavishly down to the minutest detail; but he may not represent himself as the plaintiff in their sale. When the appearance of the goods has in fact come to represent a given person as their source, and that person is in fact the plaintiff, it is impossible to make these rights absolute; compromise is essential, exactly as it is with the right to use the common language in cases of "secondary" meaning. We can only say that the court must require such changes in appearance as will effectively distinguish the defendant's wares with the least expense to him; in no event may the plaintiff suppress the defendant's sale altogether. The proper meaning of the phrase "nonfunctional," is only this: That in such cases the injunction is usually confined to nonessential elements, since these are usually enough to distinguish the goods, and are the least burdensome for the defendant to change. Whether changes in them are in all conceivable cases the limit of the plaintiff's right is a matter not before us. If a case should arise in which no effective distinction was possible without change in functional elements, it would demand consideration; but the District Court may well find an escape here from that predicament. Certainly the precise extent and kind of relief must in the first instance be a matter for the discretion of that court.

Order reversed, and motion denied.