## LUCIEN LELONG, Inc., v. LANDER CO., Inc.

District Court, S. D. New York.
May 29, 1946.

998

Duell & Kane, by David S. Kane, all of New York City, and Alexander C. Mabee, Charles W. Hills, and Samuel W. Kipnis, all of Chicago, Ill., for plaintiff.

Mock & Blum, by Asher Blum, and Alex Friedman, all of New York City, for defendant.

BONDY, District Judge.

This suit was brought to enjoin the defendant from competing unfairly with the plaintiff by using bottles in which it sells colognes produced by it and by using a name for a fragrance which are alleged to be confusingly similar to bottles and a name for a fragrance used by the plaintiff in marketing its products.

Plaintiff and defendant are producers and distributors of colognes in the United States. Both market colognes in attractive glass bottles having globular bases, long, narrow, cylindrical necks, spherical stoppers and labels encircling the entire long, cylindrical necks.

On plaintiff's labels, which are colored gold, silver or black, are printed the name of the fragrance, the name "Lucien Lelong," and the word "Distributors" or the words "Distributed by Lucien Lelong," and a monogram consisting of a large "L" parallel with a smaller "L," both in block type. Formerly there appeared on its labels the words "Paris-London-New York-Chicago." Since 1941, to comply with a stipulation entered into by it with the Federal Trade Commission, plaintiff has ceased to use the words "Paris" and "London." The globular bases of plaintiff's bottles consist of plain glass or crackled glass or crackled glass with widely spaced semispherical projections of glass or of plain glass with semispherical projections widely spaced and arranged vertically. The stoppers are spherical and are made of metal.

The labels on the defendant's bottles in evidence are tan colored and bear the names of fragrances unlike plaintiff's, the words "Lander, Fifth Avenue, New York," or "Byron, Distributor, Fifth Ave. Bldg., New York" or "Wheatley, dist. Fifth Ave., New York." The names "Wheatley" and "Byron" have been registered as trade names by the defendant and are used to comply with the request of two retailers who desire to sell the colognes under distinctive names. The bases of the bottles consist of fancy cut glass or clear glass with closely spaced semispherical projections covering the entire base. The stoppers are spherical but made of wood and are appreciably larger than the stoppers used by the plaintiff.

The plaintiff's colognes are of better quality than defendant's and are sold in high price department and drug stores. The defendant's are sold in ten cent stores and other low price stores. Plaintiff sold large quantities of its colognes in bottles with globular bases and long necks from the beginning of its use of such bottles in April, 1933. The sale of defendant's colognes in similarly shaped bottles was referred to in a trade publication dated September, 1934. The defendant adopted the use of the bottles with knowledge of the prior use of the similarly shaped bottles by the plaintiff.

Plaintiff's colognes have never been imported but have always been produced in this country from imported and domestic oils mixed with domestic alcohol. Lucien Lelong, a well known French couturier, never sold cologne or perfume in the United States. He consented to the use of his name by the plaintiff corporation in which he is a stockholder. Plaintiff's corporate name has never appeared in its advertisements or on its labels. Plaintiff in its advertising mats has stated: "Lucien Lelong has a way with cologne that women go wild about. 'Mon Image' is one of his best. * * *" Exhibits of plaintiff's advertisements disclose that until the stipulation was entered into with the Federal Trade Commission the plaintiff conspicuously featured the words: "Lucien Lelong, Paris," and thereby created the impression in the minds of consumers that plaintiff's colognes were imported. At the trial, witnesses who have been selling colognes for many years testified that it was their belief that Lelong is a French producer of perfumes and colognes

comparable to Guerlain and Caron, that Lucien Lelong is the manufacturer, that the word "distributors" on the label indicates merely that an American house distributes the imported product of Lucien Lelong and that they had informed customers that the colognes were of French origin.

One of plaintiff's fragrances is known as "Whisper." The defendant has discontinued the use of the words "Whispering Grass" to designate one of its products. The words "Garden Whispers" had been used by another producer to describe a fragrance before the adoption of the word "Whisper" by the plaintiff. "Whispering Grass" is so different in meaning, sound and appearance from "Whisper," and "Whispering Grass" was sold in bottles and under labels so dissimilar to any used by the plaintiff that no one could reasonably have believed that the bottles contained the cologne of the same producers. See National Mineral Co. v. Bourjois, Inc., 7 Cir., 62 F.2d 1; Montgomery Ward & Co. v. Spiegel, Inc., 132 F.2d 144, 30 C.C.A.(Patents) 721.

Glass containers with globular bases and long necks have been used for various purposes for centuries and such shaped bottles have been used in marketing colognes prior to plaintiff's use. There is some evidence that Rosine perfumes in bottles similarly shaped were sold in the United States in 1928 or 1929. It however does not appear that any such shaped bottles have been used as containers for perfumes or colognes in the United States between 1929 and 1933 and the plaintiff contends that any prior use of such bottles by others for marketing colognes or perfumes has been abandoned.

On January 16, 1934, there was issued to the plaintiff upon an application made May 1, 1933, design patent No. 91,372, disclosing a bottle with a globular crackled glass base and a long neck, and on October 26, 1937, design patent No. 106,647 for a "Cologne bottle or similar article," disclosing a globular crackled glass base with distantly spaced semispherical projections and a long neck. The design patents have expired, the first before, and the second about four months after, the bringing of this suit and the plaintiff has waived all its rights, if any, to damages.

The plaintiff now contends that it has "the exclusive right to market colognes and related products in bottles having a globular base and a long neck, like or similar in form and appearance to the globular base long neck bottles which plaintiff adopted in 1933, and has used continuously and extensively in the marketing of colognes of its manufacture since that date."

The plaintiff claims that the shape of bottle itself is a distinguishing mark of origin of its products notwithstanding that similarly shaped bottles have been in common use as containers of all kinds of fluids and that the design patents disclosed and the bottles used by it bear additional conspicuously distinguishing marks such as the surface ornamentation of the bases, the color, size and material of which the stoppers are made and the color of the labels and the inscriptions thereon.

The plaintiff having claimed and enjoyed the monopoly the design patent granted, the shape of the bottle has now been dedicated to the public. See Singer Manufacturing Co. v. June Manufacturing Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Scott Paper Co. v. Marcalus Manufacturing Co., Inc., 326 U.S. 249, 66 S.Ct. 101; Wilcox & Gibbs Sewing Machine Co. v. Kruse & Murphy Manufacturing Co., 3 N. Y.St.Rep. 590, affirmed 118 N.Y. 677, 23 N. E. 1146; James Heddon's Sons v. Millsite Steel & Wire Works, D.C., 35 F.Supp. 169, 179, affirmed 6 Cir.; 128 F.2d 6, 13, certiorari denied 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541. Were it otherwise the plaintiff could extend its patent monopoly through the device of a trade-mark consisting solely of the shape of the bottle. This is not permitted. See Scott Paper Co. v. Marcalus Manufacturing Co., supra.

For all the foregoing reasons, the court is of the opinion that the defendant may market its colognes in globular based, long necked bottles provided only that it does not do so in a manner to lead a reasonably prudent purchaser to believe that they contain the product of the plaintiff. The court believes that the surface markings of the bases, the colors of the labels, the sizes and colors of the stoppers and the wording on the labels on the plaintiff's and defend-

ant's bottles are so different in appearance that it is not reasonable to believe that any ordinarily prudent purchaser would be led to believe that the accused bottles contain the product of the plaintiff or that anyone but the defendant is the producer thereof. Although not decisive, it may be noted that it appears that the plaintiff was unable to find a single instance in which a buyer has been misled. See Eastern Wine Corporation v. Winslow–Warren, Ltd., 2 Cir., 137 F.2d 955, 960, certiorari denied 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452.

The defendant accordingly is entitled to a decree dismissing the complaint.