## LUCIEN LELONG, Inc., v. LANDER CO., Inc.

No. 57, Docket 20725.

Circuit Court of Appeals, Second Circuit.

Dec. 4, 1947.

David S. Kane, of New York City (Duell & Kane, of New York City, and Harold S. Walters and Charles W. Hills, both of Chicago, Ill., on the brief), for plaintiff-appellant.

Asher Blum, of New York City (Mock & Blum, of New York City, on the brief), for defendant-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an action for unfair competition where the two parties involved sell the same type of product in the same style of bottle. The product is cologne. The bottle is ball-shaped, long-necked. Each identifies its product with a label entirely encircling the long narrow neck of the bottle. The labels are of different color and, as to be expected, carry different printed matter. The action was instituted in 1944, and jurisdiction was based upon the diversity of citizenship of the parties. Compare California Apparel Creators v. Wieder of California, 2 Cir., 162 F.2d 893, nn. 5, 11, certiorari denied 68 S.Ct. 156.

In 1934 and 1937, design patents were issued to the plaintiff for ball-shaped, long-necked bottles differing mainly in the markings on their bases. Both these patents have expired, and plaintiff does not seek any relief based on such patent rights. Rather it claims a common-law trade-mark right in the shape of its bottle in use since April, 1933, as a package for cologne. It sells its product at a high price in department and drug stores. Defendant has used this style of bottle since as early as September, 1934, and sells its product at a low price in ten-cent and other low-price stores.

Plaintiff does not claim that it originated the style of bottle here involved. Indeed, it could not, for that shaped bottle has been used for centuries and is common to the barber shop, as well as the chemist's laboratory. Such bottles had even been used in marketing cologne in the United States prior to plaintiff's use, although it does not

appear that they were used for that particular purpose at the time plaintiff entered the market.

The District Court held that the differences in surface markings, colors of labels, sizes and colors of stoppers, and wording on the labels of plaintiff's and defendant's bottles were such that the ordinarily prudent purchaser would not be misled so as to believe that the accused bottles contained plaintiff's product or that anyone but the defendant was the producer thereof. It was also of the opinion that, since the design patents had expired, the shape of the bottle had been dedicated to the public. Consequently it found for the defendant, D. C. S. D. N. Y., 67 F.Supp. 997, and plaintiff has appealed.

■■■ Under the circumstances here present, plaintiff may prevail only if it proves that its style of bottle has acquired a secondary meaning. Without that it was not unfair competition for the defendant to copy it. Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co., 2 Cir., 147 F.2d 500, 503. To establish such secondary meaning it must be shown that (1) the design is a mark of distinction identifying its source, and (2) purchasers are moved to buy the article because of its source. Failing this, protection must be denied. Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299; Sinko v. Snow-Craggs Corp., 7 Cir., 105 F. 2d 450; American Fork & Hoe Co. v. Stampit Corp., 6 Cir., 125 F.2d 472. Moreover, the secondary meaning must have been established when the defendant entered the field. Upjohn Co. v. William S. Merrell Chemical Co., 6 Cir., 269 F. 209, certiorari denied 257 U.S. 638, 42 S.Ct. 50, 66 L.Ed. 410. Here the facts are all against plaintiff's claim. True, the court did not include the ultimate finding that there was no secondary meaning established; but the absence of an affirmative finding for the plaintiff is adequate basis for the judgment.

■■■ Further, the plaintiff must show that confusion has been created by defendant's entrance in the market. Lektro-Shave Corp. v. General Shaver Corp., 2 Cir., 92 F.2d 435. This it has not done. Here the District Court has specifically found to the contrary, 67 F.Supp. 997, 999, 1000: "* *

the surface markings of the bases, the colors of the labels, the sizes and colors of the stoppers and the wording on the labels on the plaintiff's and defendant's bottles are so different in appearance that it is not reasonable to believe that any ordinarily prudent purchaser would be led to believe that the accused bottles contain the product of the plaintiff or that anyone but the defendant is the producer thereof."

■■■ Nor does the record suggest that such finding was erroneous. While not controlling, it is of some significance that the plaintiff did not produce any buyer who had been misled, although both parties have been marketing their products at least since September, 1934. See Eastern Wine Corp. v. Winslow-Warren, Ltd., 2 Cir., 137 F.2d 955, 960, certiorari denied 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452.

Plaintiff relies on Lucien Lelong, Inc. v. George W. Button Corp., D. C. S. D. N. Y., 50 F.Supp. 708. There this plaintiff successfully enjoined a defendant from selling cologne in bottles that were similar to those used by plaintiff. No appeal was there taken. But a sufficient differentiation of the two cases is found in the different facts and findings. There the court found confusion to exist. None has been found here. Moreover it was there recognized that a defendant might use the design of the bottle if there were distinctive signs indicating that it was defendant's product. Such is the case here. Hence the cited case is not authority against the decision below.

■■■ Plaintiff criticizes the view of the district judge that it "having claimed and enjoyed the monopoly the design patent granted, the shape of the bottle has now been dedicated to the public." 67 F.Supp. 997, 999. Asserting that a secondary meaning had been acquired during the life of the patent, it urges that, even after the expiration of the design patents, the secondary meaning afforded protection against the marketing of cologne by others in like shaped bottles. This is a novel and sweeping claim, which would seem to run counter to the policy and purpose of the patent laws. A patent is the grant of a temporary monopoly to the patentee; at its expiration all are free to use the invention. Scott

Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 255, 66 S.Ct. 101, 90 L.Ed. 47. During the life of the patent a purchaser will naturally associate the product with the producer, since the patent prevents others from producing. But such association does not furnish justification for an extension of such protection unlimited in time. Plaintiff's position here is not that some feature of its design has acquired a secondary meaning, a contention which might be accepted on proper proof; instead it is the comprehensive claim that all the elements of appearance have acquired a secondary significance affording a protection equal to that enjoyed under the design patents. Nor does it claim affirmative deceit or misrepresentation. We think such a contention cannot be allowed. What cases there are clearly indicate that the expiration of a design patent effects a dedication of that design to the public. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 119, 120, 59 S.Ct. 109, 83 L.Ed. 73; Shredded Wheat Co. v. Humphrey Cornell Co., 2 Cir., 250 F. 960; James Heddon's Sons v. Millsite Steel & Wire Works, D. C. E. D. Mich., 35 F.Supp. 169, affirmed 6 Cir., 128 F.2d 6, 13, certiorari denied 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541; Nims on The Law of Unfair Competition and Trade-Marks, 4th Ed. 1947, 393. Apt language is found in the Shredded Wheat case, supra, 2 Cir., 250 F. 960, 964: "But the plaintiff's formal dedication of the design is conclusive reason against any injunction based upon the exclusive right to that form, however necessary the plaintiff may find it for its protection."

Plaintiff has referred us to Krem-Ko Co. v. R. G. Miller & Sons, 2 Cir., 68 F.2d 872; Sinko v. Snow-Craggs Corp., supra; Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 133 F.2d 266. These cases are not in point. So far as they consider the issue at all, they are concerned with the invalidity, not expiration, of a design patent. If in return for the statutory monopoly for a term the patentee is held thereafter to dedicate his invention to the public, it would naturally follow that where he has never had this monopoly he has nothing to give up. The situation is one where no patent has ever existed.

Here, however, plaintiff has had its patent protection for the period of the patent and cannot longer enjoy its monopoly of the very designs patented. Moreover, as we have seen, plaintiff was not able to prove secondary meaning.

Judgment affirmed.