**GENERAL TIME INSTRUMENTS CORPO-
RATION v. UNITED STATES TIME
CORPORATION.**

No. 114, Docket 20761.

Circuit Court of Appeals, Second Circuit.

Jan. 15, 1948.

FRANK, Circuit Judge, dissenting in part.

W. Brown Morton, of New York City (Rockwell & Bartholow, of New Haven, Conn., Pennie, Edmonds, Morton & Barrows and Raymond B. Canfield, all of New York City, and Richard E. Burn, of La-Salle, Ill., on the brief), for plaintiff-appellant.

John Vaughan Groner, of New York City (Robert B. Whittredge and Fish, Richardson & Neave, all of New York City, Wiggin & Dana, of New Haven, Conn., and C. Hercus Just, of Waterbury, Conn., on the brief), for defendant-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an action for infringement of a design patent and for unfair competition. Plaintiff for many years has manufactured and sold an alarm clock under the trademark "Big Ben." In 1939, it procured, on application of Henry Dreyfuss, a design patent, No. Des. 114,262, "Design for A Clock Casing," with a single claim "for a clock casing, as shown." The patent drawing shows a round clock case seated on a pedestal projecting above a flat rectangular base. The side view reveals that the front and rear of the case are convex, with a diameter almost twice its greatest thickness. Plaintiff sold nearly 3,000,000 clocks which were manufactured in accordance with this

design, between 1939, when it was first introduced, and the fall of 1942, when production was all but stopped due to wartime restrictions. Early in 1946, it again marketed these clocks. Throughout the entire period it has extensively advertised this model. Plaintiff's commercial product shows some variations from the design, notably the addition of a small auxiliary alarm-set circle below the numeral "12" and its trade names "Big Ben" and "Westclox" conspicuously displayed over the numeral "6."

Defendant's accused clocks, in the outline of their casing, are almost identical in over-all appearance with plaintiff's commercial product, both on a front and a side view. There are, however, certain marked differences of detail and, when the base is considered, of design. Thus defendant has entirely eliminated the pedestal, and instead its clock nestles directly upon its base. So, too, there are differences in the color schemes, and the make-up of the dial, with no alarm-set circle, but instead a third (red) hand for an alarm. And it carries its trade name "Waterbury"—until 1944, it was the well-known Waterbury Clock Company, formed in 1857—on the face of the clock, and its monogram plainly stamped on the back of the case. Defendant first marketed its particular clock at the end of the war. The district court concluded that the design in question was invalid and void for lack of invention, and that defendant was not guilty of unfair competition. Accordingly the complaint was dismissed. On appeal, plaintiff challenges the soundness of both these conclusions.

Judge Hincks, in his Finding No. 12, has ably analyzed the prior art. "Defendant's 1893 Duke watch has a case which is in no respect distinguishable" from that of plaintiff. So, too, viewed from the front, "defendant's Major Bowes clock, plaintiff's Lunar, Miller's spherical Model 4093 and his hemispherical Model 4092 give much the same effect." Again, "the Lux 'Marlboro' clocks except for some corrugations are similar." Moreover, as he points out, the base of plaintiff's clock was not new and in fact was not unlike that shown by the Miller Models 4738 and 4092. Clearly, then, the prior art shows all the elements that are combined in the patent before us.

It is well settled that a design patent must be the product of invention if it is to be valid. Neufeld-Furst & Co. v. Jay–Day Frocks, 2 Cir., 112 F.2d 715; In re Griffith, Cust. & Pat.App., 86 F.2d 405. It will not suffice merely to show that the design is novel, ornamental, or pleasing in appearance. Gold Seal Importers v. Morris White Fashions, 2 Cir., 124 F.2d 141. It must reveal a greater skill than that exercised by the ordinary designer who is chargeable with knowledge of the prior art. Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 133 F.2d 266; In re Eppinger, Cust. & Pat.App., 94 F.2d 401. In short, the test is whether the design involved "a step beyond the prior art requiring what is termed 'inventive genius.'" A. C. Gilbert Co. v. Shemitz, 2 Cir., 45 F.2d 98, 99. So measured, plaintiff's patent must fail. Here there is no inventive skill. No more is shown than the modification and combination of existing clock designs to produce the one at issue. The changes are too slight to disclose the requisite originality and invention necessary to sustain a patent. Knapp v. Will & Baumer Co., 2 Cir., 273 F. 380. This is the talent of the adapter, rather than the art of the inventor. The patent was therefore properly held invalid.

The copying of an unpatented design does not in itself constitute unfair competition. Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., supra; A. C . Gilbert Co. v. Shemitz, supra; Airolite Co. v. Fiedler, 2 Cir., 147 F.2d 496, certiorari denied 326 U.S. 726, 66 S.Ct. 32, 90 L.Ed. 431; Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co., 2 Cir., 147 F.2d 500. Here there is no evidence that defendant has attempted to "palm off" its product as that of the plaintiff. Indeed, plaintiff does not even contend such was the case. Thus, in order for it to be protected, plaintiff must establish that its design had acquired a secondary meaning and that the sale of defendant's clock would be likely to produce confusion. See Lucien Lelong, Inc. v. Lander Co., 2 Cir., 164 F.2d 395, and cases therein cited. Failing this, plaintiff cannot prevail. It is not disputed that nearly 3,-000,000 clocks of the design at issue had been sold up to the fall of 1942, nor is it

contested that from 1939 through 1946 approximately $2,000,000 had been spent advertising this clock. This measures plaintiff's effort to establish a secondary meaning, but does not determine its success. As we have seen, there was much prior art that had essential features similar to plaintiff's design. Clearly the task of establishing a secondary meaning for its variation of familiar designs was a difficult one. Large expenditures for advertising do not compel a conclusion that the task has been accomplished. Here there is no affirmative finding that secondary meaning had been established, and "the absence of an affirmative finding for the plaintiff is adequate basis for the judgment." Lucien Lelong, Inc. v. Lander Co., supra, 2 Cir., 164 F.2d 395, 397.

So, too, the finding as to confusion is against the plaintiff. As Judge Hincks says: "And on the whole the evidence does not warrant an inference of deception or confusion." Even if secondary meaning had been established, plaintiff could not have prevailed unless probable confusion would result from defendant's actions. Thus the plaintiff failed in its essential proof on both scores. Our examination of the evidence of record suggests no error in Judge Hincks' findings, and his conclusion seems appropriate. In fact plaintiff is relying upon what must have been a fairly long memory (during wartime) in its customers of a clock which, as we have seen, involved only an adaptation of old designs.

Affirmed.

FRANK, Circuit Judge (dissenting in part).

I do not agree with my colleagues as to the unfair competition aspect of this case. My reasons follow.

1. I happen to think that the judge-made trade-name doctrines should be re-evaluated in the light of competent research showing their practical social consequences on consumers,[1] and that, until then, the courts should not extend those doctrines to foster expanded trade-name monopolies.[2] But I also think that judicial attitudes, for or against the extension of those doctrines, should not now affect judgment in a case, like this, which presents no doctrinal novelties.

2. Here there were two conventional but crucial issues: (a) Did plaintiff establish a secondary meaning? (b) If so, did defendant's conduct create a likelihood of confusion? Yet on neither of these issues did the trial judge make a finding.

My colleagues seek to supply the first finding by citing Lucien Lelong, Inc. v. Lander Co., 2 Cir., 164 F.2d 395. There the trial court, without in any way intimating that the plaintiff had established a secondary meaning in the kind of bottle sold by defendant, expressly found an absence of likelihood of deception, and dismissed plaintiff's action; on those facts we said: "True, the court did not include the ultimate finding that there was no secondary meaning established; but the absence of an affirmative finding for the plaintiff is adequate basis for the judgment."

The situation here markedly differs: Judge Hincks here disclaimed any finding, one way or the other, as to secondary meaning. His entire opinion reads as follows: "On the issues raised by the charge of patent infringement, it seems to me that my indicated conclusions are too plainly required to warrant further discussion. On the issue of unfair competition the question, I think, is closer. The defendant protests that in its accused product it was

---

[1] See concurring opinion in Standard Brands v. Smidler, 2 Cir., 151 F.2d 34. Consider also what Judge Learned Hand said in 1918: "The art of advertising spuriously reinforced a genuine demand by the power of reiterated suggestion. * * *" When "one has for a long time bought from a single source some article that one likes, either through conscious reflection or mere conservative habit, one is apt to impute to its source a part of its putative value." It "is almost inevitable that they [the public] should come, to associate some of the supposed merit of a successful article * * * with the supposed uniformity and reliability of its manufacture." Shredded Wheat Co. v. Humphrey Cornell Co., 2 Cir., 250 F. 960, 962.

[2] See Standard Brands v. Smidler, supra.

"Under the guise of protecting against unfair competition, we must be zealous not to create perpetual monopolies." Shredded Wheat Co. v. Humphrey Cornell Co., supra.

merely putting greater emphasis on a modern trend toward functionalism. The defendant also contends that the large dial and plain numerals of its accused model which make for easy reading is also in aid of functionalism. But the fact is that the dial of the accused model, which closely approximates that of the plaintiff's patented product in size, is appreciably smaller than the defendant's 'Daybreak' model which was superseded by the accused model. This change in connection with the other obvious similarities of the accused model of the defendant's product does indeed constitute some evidence that the defendant copied plaintiff's design. But even if it did copy, it does not follow that the defendant acted tortiously. The case here comes within the rule of Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299. For here, the defendant by its marks on the product and package made it sufficiently clear to the purchasing public that its product was its own. I cannot agree that the plaintiff's lavish indulgence in advertising unaccompanied (because of wartime restrictions) with production brings the case within the rule of Shredded Wheat Co. v. Humphrey Cornell Co., 2 Cir., 250 F. 960." In his formal findings of fact and conclusions of law, the judge said: "14. The essentials of the Dreyfuss design [plaintiff's design] are embodied in the accused clocks of the defendant, exemplified by Exhibits C and H. 15. At the time of the adoption by plaintiff of the patented design for its Big Ben clocks the plaintiff and defendant were manufacturing and selling alarm clocks of designs having substantial similarity to each other but substantial differences from the patented design. The manufacture of this earlier model was not resumed by the defendant when wartime regulations permitted; instead, it then introduced the accused product, Model 30, described in Paragraph 9 above. 16. The record herein contains no direct evidence that the public has been deceived or confused as to the defendant's product or its source. And on the whole the evidence does not warrant an inference of deception or confusion. * * * If said patent be valid, it is infringed" (Finding 14)."

I interpret this quoted language of the judge to mean the following: (1) As distinguished from the patent question, that of unfair competition is not at all open and shut. (2) There is evidence that defendant copied plaintiff's clocks so closely, despite the variations in defendant's designs, that defendant, had it not differentiated its products by its distinctive marks on its clocks and packages,[3] would have been liable, if plaintiff had created a secondary meaning. (3) But (says Judge Hincks in effect) there is no need to consider whether plaintiff established a secondary meaning because, even assuming that it did, the defendant's distinctive trade-mark has the result that "an inference of deception or confusion" is unwarranted. In other words, I think the trial judge's findings here, unlike those in the Lucien Lelong case, cannot fairly be construed as negativing the existence of a secondary meaning.

The judge thus rested his decision solely on his finding that, due to defendant's mark on its clocks and boxes, no actual confusion has occurred. But it is well-settled that absence of actual confusion is not enough. There must be more, i. e., an *absence of likelihood of confusion. The trial judge made no finding to that effect.* And, on the record evidence, I cannot believe he could reasonably have so found. For, as myself a not infrequent buyer of that kind of clock, I have seen the clocks displayed outside the boxes, have paid no attention to the manner in which the clocks or boxes were marked, and have been guided exclusively by the clocks' appearance.[4]

I would therefore hold that, if plaintiff has created a secondary meaning, it should

---

[3] The judge found that "defendant's clocks carry its trade-name 'Waterbury' on the face and defendant's monogram plainly stamped on the base"; that defendant's clocks have been "packaged in an individual box conspicuously bearing the trade-mark 'Waterbury' on the sides and on the top"; and that "within the box is a guarantee leaflet and a price-tag, both of which repeatedly show the trade-mark 'Waterbury' and the name of the defendant."

[4] Absent evidence of actual confusion, a determination of likelihood of confusion must come from judicial notice. In invoking judicial notice in this field, a judge's personal reactions may serve as some guide to the reactions of others.

win. Accordingly, I would remand for an essential finding (which the trial judge avoided) on the issue of secondary meaning, and would direct that, if the judge should find that it has been proved, he should enter judgment for plaintiff.

SIBLEY, Circuit Judge, dissenting.