**HYGIENIC SPECIALTIES CO.,**
**Plaintiff-Appellee,**

v.

**H. G. SALZMAN, INC., Hutzler Mfg. Co.,**
**and C. B. Cotton & Co., Inc.,**
**Defendants-Appellants.**

No. 249, Docket 27191.

United States Court of Appeals
Second Circuit.

Argued March 6, 1962.

Decided April 2, 1962.

Joseph M. Fitzpatrick, New York City (Ward, Neal, Haselton, Orme & McElhannon, New York City, Joseph M. Fitzpatrick, John Thomas Cella, Alfred L. Haffner, Jr., New York City, on the brief), for appellants.

Harry Price, New York City, for appellee.

Before LUMBARD, Chief Judge, and KAUFMAN and MARSHALL, Circuit Judges.

KAUFMAN, Circuit Judge.

Hygienic Specialties, Inc. (Hygienic) brought suit against H. G. Salzman, Inc. (Salzman), Hutzler Mfg. Co. (Hutzler), and C. B. Cotton & Co., Inc. (Cotton), for alleged infringement of its design patent on a soap dish and infringement of the trademark "Hygienic." The complaint also alleged that Salzman and Hutzler had engaged in unfair competition.[1] The issues of design patent validity and infringement were submitted to a jury. It returned a verdict against Salzman and

---

1. Appellants' counterclaim for unfair competition against Hygienic was dismissed for a failure of proof, but this ruling is not challenged on appeal.

Hutzler but not against Cotton. Denying a motion by Salzman and Hutzler for judgment notwithstanding verdict, Judge MacMahon granted Hygienic's motion for judgment n. o. v. against Cotton. Subsequently, as trier of fact on the remaining counts of the complaint, the judge found Salzman and Hutzler guilty of unfair competition; however, he denied Hygienic's claim for trademark infringement.[2] The defendants appeal from the judgments against them, and Salzman and Hutzler ask review of the denial of their motion for judgment notwithstanding verdict.[3]

Hygienic was organized in 1947 to manufacture and sell a two-piece plastic soap dish on which it held a design patent.[4] The unique feature of this soap dish was a latticed tray upon which a bar of soap could rest while excess water dripped into a receptacle below. The enterprise was modestly successful from the start. However, Hygienic did not "clean up" (the dish being, so to speak, a "wash out") until it engaged Salzman, a manufacturer's representative dealing in household items, as its exclusive sales agent for metropolitan New York, northern New Jersey, and the City of Philadelphia. In the five years that Salzman continued in this capacity (1949–1954), Hygienic's net earnings increased from $6,000. to $15,000.

One of Salzman's earliest customers for Hygienic's soap dish was Hutzler, a wholesaler who bought the dishes in bulk and resold them to retail outlets. Sometime between February and April of 1949 Hutzler initiated the practice of wrapping the soap dishes in individual translucent polyethylene bags. Affixed to these bags was a five inch cardboard label, folded in half. This label, or "saddle top" as it is called, was colored yellow, white, and blue. On one side there appeared *inter alia* the words "Hygienic

2 Piece Unbreakable Soap Dish"; on the other side was printed, "Made by Hutzler Mfg. Co., Long Island City, N. Y." There is no indication that Hygienic ever objected to this inscription. The soap dishes were produced in a variety of colors; and the words "Hygienic Soap Dish, U S. Pat. No. 149066, Made in U. S. A." were molded on the bottom of each of them.

Early in 1954 Hutzler, negotiating directly with Hygienic, attempted to obtain the exclusive right to sell the Hygienic soap dish in this country, and alternatively, offered to buy all rights to the product. When these negotiations terminated without agreement in May, 1954, Hutzler continued to buy Hygienic's soap dishes from Salzman; but it also arranged to have Cotton begin manufacturing a new polyethylene soap dish bearing the Hutzler name. Hutzler then informed Salzman of these arrangements and Salzman agreed to distribute Hutzler's dish instead of Hygienic's. The Hygienic-Salzman sales agreement being terminable at will, Salzman, on November 17, 1954, informed the manufacturer that it no longer intended to handle Hygienic's product.

Thereafter Salzman sold Hutzler's soap dishes exclusively. Bearing the identification "Hutzler, Made in U. S. A.," these dishes were packaged in polyethylene bags with the Hygienic-Hutzler saddle top (which had been previously used) for approximately two months. Apparently these labels were "left over" stock. In any event, there is no evidence that Hygienic challenged this practice. Then, a new label made of heavy paper about 3½" long and colored yellow, white, and green was substituted. It was folded in half, and on one side was printed, "Sanitary, 2 Piece Unbreakable Polyethylene Soap Dish"; on the other side appeared "Made by Hutzler Mfg. Co., Long Island City, N. Y." The Hutzler-Salzman effort was successful, and before

---

2. Hygienic Specialties Co. v. H. G. Salzman, Inc., 189 F.Supp. 790 (S.D.N.Y. (1960).

3. Hygienic does not appeal Judge MacMahon's decision on the trademark issue.

4. U. S. Design Patent D–149,066 (Pl.Exh. #3) was issued to Barnet D. Kaplan (inventor), and Abner Weiner (assignee of one-half interest) on March 23, 1948. They, in turn, formed Hygienic as a partnership.

long more than a million Hutzler soap dishes were sold. Although Hygienic began to copy Hutzler's merchandising methods in early 1957,[5] by this time it was unable to recapture a major portion of the expanded market for two-piece soap dishes. Its profits dropped substantially; and Hygienic brought the present action to recover damages.

Hygienic was required to comply with the provisions of 35 U.S.C. § 171 in order to obtain the monopoly benefits of our patent laws. The statute provides:

> "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

> "The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."

The courts have passed on the validity of countless design patents under this statute and its predecessors, and the law, in the abstract, has been restated many times.

■ The first requirement is that the design be the result of invention.[6] Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 696 (2nd Cir. 1961); International Silver Co. v. Pomerantz, 271 F. 2d 69, 71 (2nd Cir. 1959). It must reveal a greater skill than "that exercised by the ordinary designer who is chargeable with knowledge of the prior art." General Time Instruments Corp. v. U. S. Time Corp., 165 F.2d 853, 854 (2nd Cir.), cert. denied, 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770 (1948).

The degree of difference required to establish novelty is manifested when the average observer takes the new design for a different, and not a modified already existing design. Thabet Mfg. Co. v. Kool Vent Metal Awning Corp., 226 F.2d 207, 212 (6th Cir. 1955).

■ Appellants produced evidence of design patents issued to a man named Price in 1910 and to H. P. Weaver in 1915 which, if considered together, fea-

---

5. In 1957 Hygienic, for the first time, began to wrap its own soap dishes in individual polyethylene bags with a cardboard saddle top having the words "2 Pc. Unbreakable Plastic Hygienic Soap Dish, U. S. Patent No. 149066," on one side, and "Hygienic Specialties Co., New York 13, N. Y." on the other. The saddle top was approximately the same size as the one originally used by Hutzler, but Hygienic's was colored read, white, and blue. The trial court found that Hygienic had done this as early as 1954. D.C., 189 F.Supp. 792. This is clearly erroneous. Rule 52(a), Fed.R.Civ.P., 28 U.S.C.

6. A jury in a patent case is not free to treat invention as a concept broad enough to include any discovery or novelty which may impress the jurors favorably. Packwood v. Briggs & Stratton Corp., 195 F. 2d 971, 973 (3rd Cir.), cert. denied, 344 U.S. 844, 73 S.Ct. 61, 97 L.Ed. 657 (1952). Any finding of invention by a jury must be consistent with the standards developed by the courts. If the trial court's application of defining principles reveals a clear cut case of lack of invention, it must enter judgment n. o. v. accordingly. Nachtman v. Jones & Laughlin Steel Corp., 235 F.2d 211, 212-213 (3rd

Cir. 1956), cert. denied, 352 U.S. 971, 77 S.Ct. 363, 1 L.Ed.2d 324 (1957); Berkeley Pump Co. v. Jacuzzi Bros., Inc., 214 F.2d 785, 792 (9th Cir. 1954); Packwood v. Briggs & Stratton Corp., supra.

In the present case the primary facts were not in substantial dispute; and, for purposes of review, "whether the thing patented amounts to a patentable invention" is a question of law. Mahn v. Harwood, 112 U.S. 354, 358, 6 S.Ct. 451, 28 L.Ed. 665 (1884); Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Co., 340 U.S. 147, 154–156, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Crest Specialty v. Trager, 341 U.S. 912, 71 S.Ct. 733, 95 L. Ed. 1349 (1951) (per curiam); Comment, Appellate Review of Determinations of Patentable Inventions, 29 U.Chi. L.Rev. 185, 189–190 (1961). Consequently, "conclusions, based upon the primary facts, upon which depends (sic) the ultimate findings of patentability, as well as the standard of invention applied below, are questions of law fully reviewable in this court." Tatko Bros. Slate Co. v. Hannon, 270 F.2d 571, 572 (2nd Cir.), cert. denied, 361 U.S. 915, 80 S.Ct. 260, 4 L.Ed.2d 185 (1959); Armour & Co. v. Wilson & Co., 274 F.2d 143, 151 (7th Cir. 1960) (in banc).

ture almost all of the elements found in the Hygienic soap dish design "invented" more than a quarter of a century later, including two-piece construction and a square-holed tray. We think our language in Blisscraft of Hollywood v. United Plastics Co., supra, is equally appropriate here:

"Of course, the mere fact that a person has utilized in combination a number of elements which severally were well known will not defeat the patentability of the combination. Graff, Washbourne & Dunn v. Webster, 2 Cir., 1912, 195 F. 522, 523. But the utilization of old elements in combination must represent an exercise of inventive skill and creative talent beyond that of the ordinary designer chargeable with knowledge of the prior art. (Citations omitted.) What plaintiff did amounted to nothing more than an unstartling regrouping of old elements which demonstrated no originality born of inventive faculty. This is not enough. Knickerbocker Plastic Co. v. Allied Molding Corp., 2 Cir., 1950, 184 F.2d 652, 655. It is not sufficient that plaintiff has shown the talent of an adapter; a manifestation of the art of the inventor was required. Blisscraft v. Rona Plastic Corp., D.C.S.D.N.Y.1954, 123 F. Supp. 552, affirmed 2 Cir., 1955, 219 F.2d 238. * * *" 294 F.2d 696.

The fact that the design may be "new and pleasing enough to catch the trade" alone is not sufficient. Nat Lewis Purses, Inc. v. Carole Bags, Inc., 83 F.2d 475, 476 (C.C.A.2, 1936); Amerock Corp. v. Aubrey Hardware Mfg., Inc., 275 F.2d 346, 348 (7th Cir. 1960). Concededly, this concept of invention is an elusive one, especially when applied to elements of design.[7] However, we are convinced that Hygienic's soap dish clearly does not meet the statutory test.

Furthermore, the Hygienic soap dish patent is invalid for another reason; it is not ornamental. In order to qualify for a patent a design "must be the product of aesthetic skill and artistic conception." Blisscraft of Hollywood v. United Plastics Co., supra; Burgess Vibrocrafters, Inc. v. Atkins Industries, Inc., 204 F.2d 311, 313 (7th Cir. 1953). The inventor of the soap dish design, Barnet D. Kaplan, admitted that the only design element not resulting from a mechanical function was a group of horizontal lines on the side of the dish.[8] A design dictated solely by mechanical or functional requirements is not patentable, Hopkins v. Waco Products, Inc., 205 F.2d 221, 223 (7th Cir. 1953); Blisscraft of Hollywood v. United Plastics Co., 189 F. Supp. 333, 337 (S.D.N.Y.1960), aff'd, 294 F.2d 694 (2nd Cir. 1961), and Hygienic's soap dish, much like the Blisscraft pitcher,

"has no particular aesthetic appeal in line, form, color, or otherwise. It contained no dominant artistic motif either in detail or in its overall conception. * * * The reaction which [it] inspires is simply that of the usual, useful and not unattractive piece of kitchenware." 294 F.2d 696.

It is true that a presumption of validity attaches to the issuances of a patent; but this presumption is rebuttable. Blisscraft of Hollywood v. United Plastics Co., 2 Cir., 294 F.2d 696. In this case, for the reasons stated, we hold the design patent is invalid. Therefore, the trial court erred in refusing to enter a judgment notwithstanding verdict in favor of Salzman and Hutzler, and in granting Hygienic's motion for judgment n. o. v. against Cotton.

In view of this holding, we do not reach the question of infringement. Bergman v. Aluminum Lock Shingle Corp., 251 F. 2d 801, 804 (9th Cir. 1957).

---

7. See Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Co., supra, 340 U.S. at p. 151, 71 S.Ct. 127, 95 L.Ed. 162;

Amerock Corp. v. Aubrey Hardware Mfg., Inc., supra, 7 Cir., 275 F.2d at p. 348.

8. Tr. 131.

### Unfair Competition [9]

■ Since Hygienic's soap dish was not protected by a valid design patent, there was little to prevent others from producing similar articles. The District Court was greatly disturbed by Hutzler's "slavish imitation" of Hygienic's "successful product." [10] This reaction is understandable.

"[A]t first glance it might seem intolerable that one manufacturer should be allowed to sponge on another by pirating \* \* \* without license or recompense and reap the fruits sown by another. Morally and ethically such practices strike a discordant note. It cuts across the grain of justice to permit an intruder to profit not only by the efforts of another but at his expense as well." American Safety Table Co. v. Schreiber, supra, 269 F.2d at pp. 271–272.

But, as Judge Medina points out in the quoted opinion, "this initial response to the problem has been curbed in deference to the greater public good," apparently on the principle that "imitation is the life blood of competition." Id. at p. 272. Therefore, the courts have repeatedly held that the copying of an unpatented design does not in itself constitute unfair competition. Algren Watch Findings Co., Inc. v. Kalinsky, 197 F.2d 69, 70 (2nd Cir. 1952); General Time Instruments Corp. v. U. S. Time Corp., supra, 165 F.2d at p. 854.

■■ On the other hand, competition must be "fair" both to the consumer, and so far as possible, to the trade. Consumer protection has been limited (in this context) to the prevention of confusion, i. e., the customer should not be misled into purchasing an article from one producer in the belief that it was made by someone else or emanates from some other (but unidentified) source. Norwich Pharmacal Co. v. Sterling Drug, Inc., supra, 271 F.2d at p. 571. In order to recover on this theory, the plaintiff must show that a "special significance attaches in the public mind to the nonfunctional attributes of its wares"; or, in other words, that they have a "secondary meaning." Ibid.; American-Marietta Co. v. Krigsman, 275 F.2d 287, 289 (2nd Cir. 1960). To establish such secondary meaning in this case Hygienic must prove that (1) the soap dish design is a mark of distinction identifying its source,[11] and, also that (2) purchasers are moved to buy the soap dish because

---

9. The District Court thought it "probable" that New York law applied to the claim of unfair competition, although jurisdiction was predicated on 28 U.S.C. § 1338(b), and the evidence indicates multi-state activity. 189 F.Supp. 794 n. 1. Compare the majority opinion in Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F. 2d 538, 540 n. 1 (2nd Cir. 1956) with Judge Clark's dissent at p. 545. The issue is complex; and, as these opinions vividly demonstrate, it is capable of evoking considerable controversy. See 1 Moore, Federal Practice, 659–661, 3770–3773 (2nd ed. 1960); American Safety Table Co., Inc. v. Schreiber, 269 F.2d 255, 270–271 (2nd Cir.), cert. denied, 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185 (1959). The parties in this case do not discuss the matter, and no assertion has been made that the result reached below or by this court would be in any way dependent upon a choice of federal or state law. Cf. Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569, 571 (2nd Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960). Nor do we think such choice is crucial, for the federal and state law is not essentially different; and both federal and state courts have readily borrowed decisions from one another and from the entire body of law in this field. American Safety Table Co., Inc. v. Schreiber, supra, 269 F.2d at p. 270. Under the circumstances we shall rely upon the "indeterminate general law." Blisscraft of Hollywood v. United Plastics Co., 2 Cir., 294 F.2d 694, 697.

10. 189 F.Supp. 793.

11. It must be remembered that the imitation complained of must be the design, and not the functional elements of the dish, which are in the public domain. American-Marietta Co. v. Krigsman, supra. We have not researched the genealogy of soap dishes but they have been around about as long as soap; and Hygienic is not the inventor of polyethylene.

of its source. Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 697; Lucien Lelong, Inc. v. Lander Co., Inc., 164 F.2d 395, 397 (2nd Cir. 1947). This it has not done. In this connection the trial court stated it was of the opinion that "there can be no doubt that plaintiff failed to prove that its soap dish was associated with the plaintiff in the mind of the buying public." 189 F.Supp. 793. Even if we assume, as the lower court apparently did, that "the deceptive similarities" between Hygienic's and Hutzler's soap dishes made it seem that they both emanated from the same source (not identified as Hygienic) and thereby established secondary meaning, Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-LeCoultre Watches, Inc., 221 F.2d 464, 466 (2nd Cir. 1955), cert. denied, 350 U.S. 832, 76 S.Ct. 67, 100 L.Ed. 743 (1955), Hygienic has not shown that a single consumer bought one of these soap dishes *because* of its source. On the contrary, we agree entirely with the trial judge that "it is unlikely" that a buyer would "give any thought at all to the identity of the producer. Manifestly, a purchaser of this simple and inexpensive household item * * * relies not on the reputation of the producer, but upon the apparent quality and eye appeal of the product itself." 189 F. Supp. 794. And as Judge Learned Hand stated almost a half a century ago, "it is an absolute condition to any relief whatever" on this theory "that the public cares who does make them, and not merely for their appearance and structure." Crescent Tool Co. v. Kilborn & Bishop Co., 247 F. 299, 300 (C.C.A.2, 1917); Chas. D. Briddell, Inc. v. Alglobe Trading Corp., supra, 2 Cir., 194 F.2d 416.[12]

The absence of secondary meaning does not always preclude recovery on a claim for unfair competition, because competition must be "fair" to the trade as well as to the consumer. Thus, the law recognizes a right of relief against certain practices having destructive effect primarily on a producer's competitive position, to wit, actual deception of purchasers, palming off, and appropriation of property rights. Blisscraft of Hollywood v. United Plastics Co., 294 F. 2d 698; Lincoln Restaurant Corp. v. Wolfies Restaurant Inc., 291 F.2d 302, 303 (2nd Cir.), cert. denied, 368 U.S. 889, 82 S.Ct. 143, 7 L.Ed.2d 88 (1961); Norwich Pharmacal Co. v. Sterling Drug, Inc., supra, 271 F.2d at p. 571 and federal and New York cases cited therein.

We note that the trial court found that there was an "absence of direct evidence of confusion." 189 F.Supp. 793. Hutzler sold more than a million of its own soap dishes, but Hygienic did not produce any customer who had been actually misled. See Lucien Lelong, Inc. v. Lander Co., Inc., supra, 164 F.2d at p. 397. Inasmuch as some confusion is a natural, and very likely an unavoidable result of permissible imitation, American Safety Table Co., Inc. v. Schreiber, supra, 269 F.2d at p. 273, and, as we have already held, it is manifest that a customer would purchase these soap dishes because of their quality and appearance, and *not* because of their source, we are unwilling to infer from the mere fact of Hutzler's commercial success that actual deception occurred.

We next turn to the trial court's finding that Hutzler was "palming off" its soap dish for Hygienic's product. It has long been settled that:

"A man is not to sell his own goods under the pretence that they are the goods of another man; he cannot be permitted to practice such a deception, nor to use the means which contribute to that end. He cannot therefore be allowed to use names, marks, letters, or other

12. Since we hold that Hygienic failed to establish any secondary meaning, it is unnecessary to review, at this point, the lower court's finding that the sale of Hutzler's soap dishes was likely to produce confusion—which it is also required to establish in order to sustain its claim. General Time Instruments Corp. v. U. S. Time Corp., supra, 165 F.2d at p. 855; Lucien Lelong, Inc. v. Lander Co., Inc., supra, 164 F.2d at p. 397.

*indicia*, by which he may induce purchasers to believe, that the goods which he is selling are the manufacture of another person." Perry v. Truefitt, 6 Beav. 72, 49 Eng.Rep. 749, 752 (Rolls, 1842).

Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598, 604, 9 S.Ct. 166, 32 L.Ed. 535 (1888); 1 Nims, Unfair Competition and Trademarks § 9a. Traditionally, a plaintiff complaining of "palming off" must prove the perpetration of fraud, "i. e., that the defendant is so foisting his product on the market that there is resulting confusion or a likelihood of confusion as to its source in the mind of the buying public." Speedry Products, Inc. v. Dri Mark Products, Inc., 271 F.2d 646, 648 (2nd Cir. 1959).

 In the present case the claim of "palming off" is based on (1) the similarity of the Hygienic and Hutzler dishes, (2) the manner in which Hutzler packaged and labeled its product, and (3) Salzman's distribution practices. The first argument is clearly not enough to establish unfair competition. True, Hutzler's soap dish is similar to the Hygienic product—but all two-piece polyethylene soap dishes must be similar because their design is, for the most part, dictated by their function. As we have already pointed out, Hygienic's design was admittedly controlled by utilitarian requirements.[13] *A fortiori*, Hutzler's dish, regardless of Hutzler's intentions, was subject to the same limitations. To paraphrase Gertrude Stein's commentary on a rose, a dish is a dish is a dish. Moreover, the soap dishes were not identical.[14] In addition to differences in the legs and side decoration, the Hygienic and Hutzler names were displayed prominently on

the bottom of their respective soap dishes. In any event, the combination of necessary similarity and actual differences would make it clearly erroneous to infer from the soap dishes alone that Hutzler was "palming off."

However, it would seem that the lower court based its finding not merely on the similarity of the dishes, but on its observation that Hutzler wrapped each of its dishes in a "translucent bag identical to Hygienic's," a bag which "effectively clouds" differences. Furthermore, the court was impressed by Hutzler's "slavish" imitation of Hygienic's "style of packaging and labeling," a practice considered all the more deceptive because "defendants treacherously substituted their copy into the same market through the identical channels of distribution previously enjoyed by plaintiff."[15] We do not agree.

 Hutzler did not begin to use translucent bags in order to hide the differences between its product and the Hygienic dish, as the lower court's opinion suggests. Hutzler began to use the bags when it was selling Hygienic's dish, and merely continued to use this not unusual wrapping for its own dishes after the "break" in 1954. Nor did Hutzler copy the merchandising technique from Hygienic; indeed, the opposite is true, and Hygienic adopted the idea years later in 1957. Similarly, it was Hutzler that first used saddle tops in 1954 when it was packaging Hygienic's dishes under the Hutzler manufacturing imprint—apparently without objection from any quarter. And despite the fact that Hygienic was not wrapping its own dishes in this manner (in 1954) Hutzler substituted a new and distinctive label on the packages which contained the Hutzler dish.[16] The

---

13. See p. 618, supra.

14. We are in as good a position as the trial judge to evaluate exhibit evidence. Chas. D. Briddell, Inc. v. Alglobe Trading Corp., supra, 194 F.2d at p. 420.

15. 189 F.Supp. 793.

16. It does appear that for a brief period in 1954 Hutzler used up the old Hygienic-Hutzler labels on packages containing Hutzler dishes. See Pl. Exh. #6. But there is no evidence that Hygienic objected to this practice, as it had not objected previously to this "Made by Hutzler Mfg. Co." label when Hutzler was selling Hygienic dishes.

trial court's finding that Hutzler's packaging practices were copied from Hygienic is wholly without support in the evidence; and the conclusions which rest upon it cannot stand.

Furthermore, there was no attempt to mislead retail outlets into buying Hutzler's dishes from Salzman in the belief that they were continuing to get Hygienic's product as before. On November 17, 1954, the very day that Salzman notified Hygienic that it was terminating their relationship (as it had the right to do), Salzman circulated a letter to all of its customers which began:

"Dear Customer:

"Please be advised that we no longer represent the Hygienic Specialties Co., for the sale of Hygienic * * * Soap Dishes * *" (Pl. Exh. #9).

This letter, in addition to factors already mentioned, is completely inconsistent with Hygienic's claim that Salzman was "palming off."

Finally, the court below based its holding that appellants engaged in unfair competition on a finding that Salzman and Hutzler violated Hygienic's property rights. Liability can sometimes be predicated on such a theory, Blisscraft of Hollywood v. United Plastics Co., 2 Cir., 294 F.2d 698; Lincoln Restaurant Corp. v. Wolfies Restaurant Inc., supra, but the theory's reach is uncertain. So far, it appears to have been limited to cases involving deceptive misappropriation of property rights and cases in which there was interference with confidential or contractual relationships. Norwich Pharmacal Co. v. Sterling Drug, Inc., supra, 271 F.2d at p. 572; Continental Casualty Co. v. Beardsley, Inc., 151 F.Supp. 28, 43–45 (S.D.N.Y.1957), aff'd, 253 F.2d 702 (2nd Cir.), cert. denied, 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958).

### (a) *Misappropriation*

■ Although certain kinds of "goodwill" have long been recognized by this Court as constituting property,

Washburn v. National Wall-Paper Co., 81 F. 17, 20 (C.C.A.2, 1897), there is one kind of good-will that is not:

"It is usually described as the good-will of the product. It is the favor which an article of commerce, regardless of the identity of its maker, wins from the public, not because of its origin nor because of any peculiar skill or care that has gone into its manufacture but because of the nature, usefulness and other characteristics of the article itself. It represents the popularity of an article without regard to its manufacturer or seller. Such good-will cannot be bought or sold. It does not belong to anyone, not even to him who may have created it by popularizing the article which is involved. It is in the public domain. 'Sharing in the good-will of an article unprotected by patent or trademark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested.'" [Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 122, 59 S.Ct. 109, 83 L.Ed. 73 (1938).] 1 Nims, op. cit. supra at p. 79.

We have already found that Hygienic's design gave rise to no secondary meaning; and that it is unlikely any purchaser would care who made one of these two-piece polyethylene dishes. Therefore, any good-will which may have existed emanated from the product itself. Hutzler did not misappropriate this good-will; it merely exercised its right to share it. Kellogg Co. v. National Biscuit Co., supra. And this alone is not unfair competition.

### (b) *Interference*

■ The trial court also held that Salzman and Hutzler "were in agency relationships with the plaintiff" and that they acted in a manner "inconsistent with their trust." 189 F.Supp. 795. With respect to Hutzler, this conclusion is based on a clearly erroneous finding of fact. Hutzler bought soap dishes from

Hygienic (Tr. 121); it did not sell them on commission. Hutzler was a purchaser, not an agent. As such it was not in a fiduciary relationship with Hygienic and could not be liable for acting in its own self-interest. Restatement of Agency (Second), § 14J, and comments (a)–(e).

 Salzman, on the other hand, was an agent engaged in distributing Hygienic's product on a commission basis. But the record is barren of any evidence that Salzman, during the life of this freely terminable agency relationship, made any overtures to its customers for the purpose of persuading them to buy Hutzler's dish instead of Hygienic's. So long as the agency agreement lasted Hygienic profited from it handsomely. When it was terminated, Hygienic was forced to find its own channels of distribution instead of relying on Salzman's established connections with the trade. Hygienic would have this Court, in effect, give it a perpetual right to the Salzman distributive scheme although it was never able to secure such privileges by contract. This we cannot do.[17] We know of no law which requires a distributor to give up the right to deal with manufacturers of its choosing absent contractual restrictions on that free choice or other considerations not present here. And where the distributor exercises that choice, without having deliberately diverted business from a manufacturer while it was an agent, and without resorting to deception or palming off afterwards, there is no unfair competition. Similarly, it was not unlawful for Hutzler to propose to Salzman that the distributor substitute Hutzler's line for Hygienic's where this would not violate Hygienic's contract rights. We believe that in holding to the contrary the court below overlooked "the difference between a deliberate at-

tempt to deceive and a deliberate attempt to compete." Norwich Pharmacal Co. v. Sterling Drug, Inc., supra, 271 F.2d at p. 572.

Reversed and complaint dismissed.

---

17. The cases cited by the Court below do not support the proposition that it is unfair competition for a distributor to discontinue business relations with one manufacturer in order to deal with another who is selling a similar product. In Stewart Paint Mfg. Co. v. United Hardware Distributing Co., 253 F.2d 568, modified, 259 F.2d 273 (8th Cir. 1958)

there was a clear instance of palming off. Raycarr Sales Corp. v. Herman Rynveld's Son Corp., 1 A.D.2d 952, 150 N.Y.S.2d 619 (1st Dept. 1956), reversing 147 N.Y.S.2d 425 (Sup.Ct.1955) dealt with problems arising from the distributor's sale of competing lines, a situation not existing in the present case.